A. B. CORLEY ET AL., APPELLANTS, v. J. T. MONTGOMERY ET AL., RE-
SPONDENTS.—46 S. W. (2d) 283.

Kansas City Court of Appeals. February 1, 1932.

*Irwin & Bushman* for appellants.

*Donald S. Lamm* for respondents.

TRIMBLE, P. J.—This is a suit brought July 29, 1930, against the members of the School Board of Sedalia by resident tax-paying citizens of one of the subdivisions of the Sedalia School District, being a ward school and known as the "Arlington School," which has heretofore, for twenty-four years, been maintained as a primary ward school, but which the board is about to abandon and no longer maintain, thereby requiring the children of that ward school to attend school at other schoolhouses in other parts of the city. The object of the suit is to compel the board to continue the maintenance of said primary ward school and to furnish teachers for said school and reasonable facilities for carrying on said primary school in said ward.

Upon the appearance of the board, a demurrer was filed, which, after hearing, the trial court sustained, and, plaintiffs refusing to plead further, judgment was rendered for defendants. Thereupon, plaintiffs appealed.

The Sedalia School District includes Sedalia, a city of the third class, and, under the provisions of section 9194, Revised Statutes 1929, is a "City School District."

Years prior to the institution of this suit the board of education, under provisions similar to those in what is now section 9330, Revised Statutes 1929, divided the school *district* into school *wards,* and established an adequate number of primary or ward schools, and erected and furnished a suitable school building in each, of which the ward school involved herein is one. And ever since that time, said Arlington school has been recognized as such and a school has been maintained therein for the accommodation of the children residing in the territory assigned to said ward and ward school.

The petition, after alleging the character and qualification of the plaintiffs, the names of the defendants as members of said Sedalia School District and their duties, the creation, establishment twenty-four years ago, and the subsequent maintenance, of said Arlington Ward School, and the other facts stated in the opening paragraph of this opinion, goes on to allege in substance that—

The boundaries of said Arlington ward school, located in the easterly part of the city of Sedalia, comprised all that part of the city lying east of New York Avenue and Porter Street, and south of the Missouri Pacific right-of-way; that said school building contains four rooms and is capable of accommodating 125 pupils; that during the school year of 1929-30, approximately ninety-eight pupils were in attendance at said school, and that more than 100 resident pupils of said ward will, if permitted, attend said school during the school year of 1930-31.

That the assessed valuation of the property in said ward school district is $500,670, and the resident tax-paying citizens of said ward will be taxed, during the year 1930, for the support of the public schools in Sedalia, in the sum of $7,009, and will be forced to continue to pay taxes from year to year on property in Sedalia School District and especially located in Arlington Ward School District.

The petition further alleges that—"the defendants, the board of directors of the said Sedalia School District, are threatening and are about to abandon said ward school and to discontinue the school within said ward and unless enjoined from so doing they will consummate their purpose in closing said school in said ward to the pupils within said ward district and that the children of said Arlington School Ward, will be required to travel long distances in order to reach other school houses in other wards in said city; that *no vote was taken* at the last annual meeting *authorizing the board of directors* of Sedalia School District to remove said school house site or authorizing said board of directors of said Sedalia School District *to abolish said school or ward district* and to remove therefrom the established school therein or to remove the site of said school house to some other place within the city of Sedalia other than the place heretofore established, maintained and know as the Arlington school house.

"that if the defendants are permitted to carry into execution their threat to abolish said school and to remove the same to some other site it will cause great hardship and inconvenience on the pupils of said district and cause them to travel long distances in order to reach a primary school; that the children who will attend Arlington school are those only who are in the primary grades and are physically incapable of going long distances to school; that by causing said children to travel long distances to reach a primary school it would subject them to the rigors of the winter season and endanger their lives from traffic upon the streets and be injurious to their health and will greatly militate against their school progress and the obtaining of the benefits of a primary education, and many therein would be unable to attend school on account of the removal of said school house to some other part of the district.

"that the said Arlington school house has already been constructed, that it is ample and commodious for the purpose of carrying on primary schools therein, and that there is ample funds in the treasury of said district with which to employ teachers therein.

"that many of the homes in that section of the city of Sedalia have been purchased, located and built and investments made upon the

faith of the continuance of said school, and that a discontinuance of said primary school within said ward district would greatly depreciate their property, and especially the property of these plaintiffs, for which they will have no adequate remedy at law.

"that the action of said board in undertaking to discontinue said school and to remove the same to other parts of the city outside of the boundaries of said ward as heretofore laid out and prescribed is arbitrary, unreasonable, unjust and oppressive upon the part of said board of education, and for which arbitrary, unjust, unwarranted and illegal acts of said board which they are now about to consummate, these plaintiffs have no adequate remedy at law."

The petition closed with a prayer that defendants be required to show cause why they should not be compelled by mandatory order to continue to employ teachers in said Arlington ward school, and to maintain the usual and ordinary teachers and facilities for said school, and, on final hearing, be required to *continue* the same.

The vital question in this case is, not whether the board of education *should* discontinue the ward school in question, but whether it has the *power* to do so, without a vote of the people? If it has such power then mandamus will not lie, for mandamus cannot control discretionary action. [State ex rel. v. Dickey, 280 Mo. 536, 548-9.]

We do not think the case can be disposed of on the ground that the petition, in alleging that the attempted discontinuance of the school "is arbitrary, unreasonable, unjust and oppressive" or is "unjust, unwarranted and illegal," pleads only legal conclusions. Of course, if there were no *facts alleged* in the petition showing that the threatened action was of such character then the above quoted words would be no pleading but mere conclusions of law. But these so-called vituperative epithets" are *not unaccompanied* by the statement of facts to support them. For instance, the petition alleges that the school district has the money to maintain the ward school; that great hardship and inconvenience will ensue to the pupils of said ward school, in that they are in the primary grades and are physically incapable of going long distances to other schools; that they will be subjected to the rigors of the winter season and be exposed to danger from traffic (no small danger in these days of swift moving automobiles and careless, not to say drunken, drivers); that property has been purchased on the faith and on the reliance of the fact that a nearby school was and would be maintained, and such property will greatly depreciate if the school is discontinued. Legal conclusions do no harm if they appear as the result of, or are supported by, pleaded issuable facts; but when they are *unaccompanied* by such facts, then they render the petition demurrable. [Dyrcz v. Hammond Packing Company, 194 S. W. 761, 762; Tucker v. Diocese of

West Missouri, 264 S. W. 897, 902; Roberts v. Anderson, 254 S. W. 723.] A pleading is to be liberally construed. Section 801, Revised Statutes 1929; and will be sustained "however inartificially the facts may be stated." 21 R. C. L., section 80, page 519; provided, of course, it is open to construction and contains all the constitutive facts necessary to a good cause of action. [Malinckrodt Chem. Works v. Nemnich, 169 Mo. 388, 397.]

So that we cannot say that the petition is demurrable on the ground that only legal conclusions were pleaded. It may be that the pleaded facts are not sufficient in law to justify the granting of the relief sought, but this point is not relied upon as ground of the demurrer.

In presenting this appeal the parties discuss the case differently, that is, one side seems to regard it as that of a mandatory injunction suit, while the other treats it as a suit in mandamus to compel the board to do the things above mentioned. As there is nothing in the petition seeking to *enjoin* the doing of anything then being done, but only to *compel* the board to *refrain* from abandoning and discontinuing the school as they threaten to do in the future, and to *compel* them to maintain and continue the school, we think we are justified in calling and treating it as a mandamus suit to compel the board to pursue a certain course of action. As said before, this raised the question, has the board the *power* to do what is threatened; but we can, in no way, enter into the problem of whether the board in its threatened course is acting wisely and well, or not.

Plaintiffs urge that public officers, such as the members of the school board, are creatures of the law, whose duties are fully provided for by statute; that in a way they are agents, but they are never general agents, in the sense that they are hampered neither by custom nor law, nor are they absolutely free to follow their own volition, citing Lamar Township v. City of Lamar, 261 Mo. 171, 189. We do not question the accuracy of the above general statement, nor do we mean to go contrary to it. No doubt, if the board attempts to do something they are not authorized to do, or, if, being authorized to do certain things under certain circumstances, they seek to do something outside of or beyond those circumstances, or which, as a matter of law, or unquestionably, are injurious to the public welfare and violative of their public duties, they can be controlled and directed into proper action by the appropriate suit. But in matters which are confided to their discretion and which they are not forbidden by law to do, their action cannot be questioned or sought to be controlled by mandamus or otherwise.

Plaintiffs say that the law giving the board the discretionary right to divide the city school district into wards exists by virtue of section

9330, Article 4, Chapter 57, Revised Statutes 1929, and that it was first enacted and contained in section 8 of Chapter 47, General Statutes 1865, which, so far as applicable, reads as follows:

"Section 8. It shall be the duty of said board, as soon as the means for that purpose can be provided, to establish in said district an adequate number of primary schools, to be so located as best to accommodate the inhabitants thereof, and in which the rudiments of education shall be taught." . . .

Section 7 of said Chapter 47, General Statutes 1865, providing for the erection of a schoolhouse or schoolhouses, in a "city, town or village district," the organization of which is *first* provided for in said Chapter 47, reads as follows:

"Section 7. Whenever said board shall deem it necessary to purchase or erect a school house or school houses for said district, or to purchase sites for the same, they shall call a meeting of the legal voters in said district, by giving at least ten days' notice of the time and place and object of such meeting, in some newspaper in general circulation within said district, if any such there be, and if there be no such newspaper, then by posting up written or printed notices thereof at five or more public places in said district; and the president of said board, and, in his absence, one of the other directors, shall act as chairman of said meeting; and said meeting may determine, by a majority of the votes cast, upon the erection of a school house or school houses, and the purchase of said site or sites therefor, and the amount of money to be raised for the purpose aforesaid, and the time or times when the same shall be paid, which money so voted shall be thereupon certified by the board of education, by its chairman and secretary, to the clerk of the county, and shall be assessed in said district, collected and paid over to the treasurer of said district, in the same manner as the tax hereinafter provided for."

Section 15 of said Chapter 47, General Statutes 1865, page 277, says—

"Section 15. This act, authorizing any city, town or village to organize for school purposes with special privileges, shall not be so construed as to prevent the respective boards of education to select sites for schoolhouses," etc.

Hence the argument seems to be that since by Sections 7 and 8 the *purchase* of sites and *erection* of schoolhouses for such district requires a meeting and vote of the "legal voters in said district," then it logically follows that the *abandonment* or *discontinuance* of any one of the ward schools so established must likewise be first authorized by such a meeting and vote. Perhaps the argument may, and no

doubt does, go further and assert that unquestionably Sections 8 and 15 above quoted, by their very terms, give the board the *discretionary* power to *divide* the city school district into wards, but that having done so, Section 8 also says the board *"shall"* establish primary schools therein so that, after having exercised the discretionary power of dividing the city School District into ward schools or districts, then the board is required to, or *"shall,"* establish schools therein *"to be so located as best to accommodate the inhabitants thereof"* and no provision is made anywhere to authorize the board to *abandon* or *discontinue* such schools with or without a vote of the people therein, except that in Section 9330, Revised Statutes 1929 (to be hereinafter quoted and discussed), power is given to *sell and convey* any school property no longer needed in the district; which, say plaintiffs, the board relies upon as giving it the implied power to *abandon* a school in a ward and thereby *create the necessity* or demand for the *sale* of the school property so abandoned or discontinued.

We may as well quote and discuss Section 9330, Revised Statutes 1929, here and now, as to postpone it to some later part of this opinion. Said section is as follows:—

"Section 9330. PRIMARY AND HIGH SCHOOLS TO BE ESTABLISHED AND SITES LOCATED. When the *demands of the district require more than one public school* building therein, the board shall, as soon as sufficient funds have been provided therefor, establish *an adequate number of primary or ward schools,* corresponding in grade to those of other public school districts, and *for this purpose* the board shall *divide the school district* into school wards and fix the boundaries thereof, and the board shall select and procure a site in each newly formed ward and erect a suitable school building thereon and furnish the same; and the board may also establish schools of a higher grade, in which studies not enumerated in section 9472, may be pursued; and *whenever* there is within the district *any school property* that is *no longer required* for the use of the *district, the board is hereby authorized to advertise, sell and convey the same,* and the proceeds derived therefrom shall be placed to the credit of the building fund of such district." (Italics ours.)

Now, it is manifest that this section leaves it to the discretion of the board, not only as to *when* ward schools shall be established, but also as to the *number* thereof (which must be "adequate"); and discretion is also given the board to select the sites of such ward schools and to erect and furnish the schoolhouse in each. The board is also given authority to decide when "there is within the district property that is no longer required for the use of the *district,"* and,

in such event, to "advertise, *sell* and *convey* the same." Nothing is said in that section, or anywhere else in that Article, about taking a vote of the people on any of these questions; and if discretionary power to decide all these matters is given the board, does not this necessarily imply, in the absence of any positive statute to the contrary, that the board has the discretionary power to discontinue the use of any property not being required? There is nothing in the record to show that the board is about to "discontinue such use in order to create the necessity for the sale thereof." In fact, so far as the record discloses, no immediate sale of the property is contemplated. Whether a ward school is any longer required for the use of the *district* depends upon the needs and the circumstances existing in the entire Sedalia School District, and not merely those existing in the Arlington Ward. The petition attempts to set out facts deemed sufficient to show that the ward school is required, so far only as matters within that ward are concerned; but it is wholly silent on the subject of whether conditions throughout the entire Sedalia School District are such as to no longer require the continuance of said ward school.

Plaintiffs' argument is, furthermore, that not only does Section 9330, Article 4, Chapter 57, Revised Statutes 1929, have its origin in Sections 7 and 8 of Chapter 47, General Statutes 1865, but that in the Revision of 1879, the specific power given by the board to select sites was expressly repealed. Also, that the provisions of Section 9330, Article 4, Chapter 57, Revised Statutes 1929, had been in the *general* law applicable to schools for many years, but that the *compilers* of the various revisions have, without legislative warrant or sanction, shifted such provisions from the chapter applying to schools *generally*, to that dealing with "city, town and village schools" *alone.* Hence, so plaintiffs contend, the absence of *any law* in Article 4, Chapter 57, Revised Statutes 1929 (in which Section 9330, appears and which gives the board *discretionary* power to divide the city School District into wards, procure sites and erect schoolhouses thereon, as soon as sufficient funds have been provided therefor), *authorizing the abandonment,* without vote, of any ward school, together with the presence of a law requiring a *vote* on such matters in the law (in Articles other than 4), relating to public schools generally, show that Section 9330, Article 4, Chapter 57, in fact, belongs in such other articles and not in Article 4. The reasons urged for this contention is that this change from one article to another, or to Article 4, was done, not by the Legislature, but by the *compilers* of the various revisions.

Unfortunately for plaintiffs' contention in this regard, Section 1 of the Act of June 1, 1909, Laws 1909, page 770, shows that certain

Sections relating to and under the head of "Public Schools," and all of the provisions under the head of "City, Town and Village Schools" were *repealed* and a large number of *new* sections were enacted, in Section 2 of which the public schools of the State were classified and divided into (1) "common school districts," (2) "consolidated school districts," (3) "town school districts," and (4) "city school districts." Section 118 of the Act (Laws 1909, p. 814), comprises what is now Section 9330, Revised Statutes 1929, in Chapter 57, Article 4, entitled "Laws applicable to City, Town and Consolidated School Districts." And thereafter in the Revision of 1899, said Section 118, appears as section 10869 of Article 4, and is continued in the Revision of 1909 as section 11241 of said Article 4. So that the so-called change from the article in reference to "Common School Districts" to Article 4 entitled "City School Districts" *had* legislative warrant, even if the very terms of what originally was section 118 of Laws 1909, page 814 (now section 9330, Revised Statutes 1929), did not disclose on its face that it applied solely to city school districts, which, of course, they unquestionably do.

It is urged that section 9269 of Article 2, Chapter 57, Revised Statutes 1929, which article contains "laws applicable to all classes of schools" and which says, among other provisions, that "no school house or school sites shall be abandoned or sold until another site and house are provided for such school district" applies to a ward school such as the one in question. We think plaintiffs confuse, or rather use interchangeably and as synonymous, the words "school district" and "ward school." They are not the same and are not so used anywhere in the statutes. The "district" is the *one corporate entity* governed by the board of education. The term "ward" is used merely to designate a *fractional part* of that district, into a number of which the board has the discretionary power to divide the city school district. So that section 9269, Revised Statutes 1929, is not dealing with a mere ward school or schoolhouse, but is speaking of districts not so constituted and divided, and prevents *the* schoolhouse or site in that district from being abandoned or sold until "another" is provided for that *district*. The question in the case at bar is not whether a board has the power to abandon the only school established and maintained within a district, but whether it has the power to discontinue holding school in what section 9330, Revised Statutes 1929, calls a "school ward," that being merely one of the small fractional parts of the school district which the board, in its discretionary power, created and set up in the first instance. It would seem that what the board has power, in its discretion, to *create,* it would likewise have the discretionary power, in the absence of any statute specifically applicable forbidding it, to discon-

tinue or do away with. The *discretionary* power to divide the school district into wards, and to use that *discretion* in regard to both number and size of said wards, would seem to impliedly negative the idea that, after having once made that division, the same must remain forever unchangeable, no matter what "the demands of the district require" nor how few' of the said wards, or ward schools, may constitute "an adequate number" for the district, which quoted expressions are used in said section 9330, giving the board the above mentioned discretionary power. The petition does not state *how* the abandonment or discontinuance of the ward school is to be accomplished, nor *why*. Nor is it stated, or contended anywhere, that the remaining wards will be inadequate or that the children of the ward in question will be *deprived* of school facilities, but only that they will be inconvenienced.

The case of Buchanan v. School District of Hannibal, 25 Mo. App. 86, is relied upon by plaintiffs as controlling the case at bar. That case was decided in 1887, long before the enactment of the article relating to "City, Town and Consolidated School Districts" in 1909. As the law then was, the provisions requiring a vote of the people on almost every proposition was a part of the article relating to the powers of the school board in question. Thus there was in that article *express* provisions requiring the submission of such questions as the one at issue to a vote of the people. Not so in the case at bar.

The case of Gladney v. Gibson, 208 Mo. App. 70, although a case where the board was sought to be enjoined from selecting another schoolhouse site and from changing the location of a school site theretofore established, because no vote was had, is pertinent in its rulings and reasoning to this case. The court held that section 11210, Revised Statutes 1919 (now section 9284, Revised Statutes 1929), deals with the powers of annual meetings in common school districts and relates to them alone, 'and has no application to city, town and consolidated school districts of which the Sedalia School District is one. Furthermore, it is held in the Gladney case that said section 11210, now section 9284, by its very terms is not applicable to a city school district; that section 11143, Revised Statutes 1919 (now section 9215, Revised Statutes 1929), clearly vests the authority to select a schoolhouse site in the board of education of a city, town or consolidated school district. And that when this section is considered with section 11241, Revised Statutes 1919 (now section 9330, Revised Statutes 1929), and also in connection with section 11238, Revised Statutes 1919 (now section 9327, Revised Statutes 1929), vesting the government and control of city, town and consolidated school districts in the board of education, while keeping in mind that the authority to select or change a schoolhouse site is not, by

any other statute applicable to a district of this character, vested in the qualified voters of the district, it seems quite clear that by section 11241, *supra*, now section 9330, *supra*, it was intended to confer on the *board* authority to select and acquire or change high school sites as well as sites for lower grades.

The Supreme Court in State ex rel. v. Jones, 155 Mo. 570, refused to mandamus the board of directors of a city school district to compel them to divide the district into enough wards so as to obviate the necessity of the children passing one schoolhouse to get to another, or of traveling long distances through exposed and dangerous places of the streets and railroad crossings in the town of Montgomery City. The section involved was the same section now known as section 9330, Revised Statutes 1929; and the court held that the said section contemplated that the "demands of the district" requiring the dividing of the district into wards and the establishment of ward schools were those of necessity and not of convenience. Reasoning by analogy it would seem that likewise the board would not be mandamused to *continue* a ward school merely because it would be more convenient for the children and not simply a necessity. There is no allegation in the petition that the other ward schools are inadequate to meet the demands of all the children who would attend them if the ward school in question was discontinued. Provided their action is legal, or within the *power* of the board, courts will not inquire into the board's motives or reason for their action. [State ex rel. v. Board of Education of Consolidated School Dist. No. 1, 21 S. W. (2d) 645.] The power of the board of a city, town or consolidated school district, to establish ward schools carries with it, or necessarily implies, the power to abandon schools no longer required. [Crow v. Consolidated School District, No. 7, 36 S. W. (2d) 676.] So far as the allegations of the petition are concerned, there is nothing to show but that the proposed or threatened abandonment of the ward school in question is demanded by the direst necessity or that the discontinuance of the said school is anything more than merely temporary until that necessity is past. We do not believe that, under all the foregoing, we have the power to put forth our mandatory hand and assume a superintending control over the affairs of the Sedalia School District. At any rate, no such power under the circumstances and in the respects disclosed herein should or can be exercised.

The judgment is, therefore, affirmed. All concur.