Monte MONTAGUE (Contestant), Appellant,

v.

Elmer WHITNEY, a/k/a Elmer W. Whitney (Contestee), Respondent.

No. 29697.

St. Louis Court of Appeals.
Missouri.

Jan. 2, 1957.

Motion for Rehearing or to Transfer to Supreme Court Denied Feb. 18, 1957.

Paul E. Fitzsimmons, Clayton, for appellant.

Kerth, Theis & Schreiber, Clayton, and Richard K. Nalley, St. Louis, for respondent.

JAMES D. CLEMENS, Special Judge.

Election contest. On contestee's motion the trial court dismissed contestant's petition and he appeals. The issue here is whether the petition states sufficient facts to grant relief under the provisions of Chapter 124, RSMo 1949, pertaining to election contests. (All references to chapter and section numbers refer to RSMo 1949, V.A.M.S., unless otherwise designated).

The petition alleges: Contestant Monte Montague was the only candidate to file for mayor of Rock Hill, a city of the fourth class, at the April 3, 1956 election. His name was printed on the ballots, followed by an open square. Printed below was a blank line, also followed by an open square. A write-in campaign was staged on behalf of contestee and according to the official canvass, contestant Montague received 576

votes and contestee Whitney received 660 votes and was declared elected. As grounds for his contest of the election contestant Montague says: On substantially all of the ballots which were counted for contestee Whitney the voters failed to draw a line through the printed name of contestant Montague, and failed to place a cross mark in the square after the name of the write-in candidate, contestee Whitney, in violation of the provisions of Section 111.580; that such ballots were therefore fraudulent under the provisions of section 111.650. Contestee Whitney's apparent election is in violation of section 111.610, because voters were so confused as to the true identity of contestee Whitney that it was impossible for the election judges to determine for whom the voters intended to cast their ballots. This arose out of the situation that both contestee Elmer W. Whitney and his father Elmer E. Whitney were well-known townsmen of Rock Hill; that contestee's full name differs from father's only by their middle initials; that sample ballots, campaign letters and advertising bore only the name "Elmer Whitney"; that both contestee and his father solicited votes for "Elmer Whitney", and that the write-in votes which were counted for contestee were for "Elmer Whitney" *without knowledge* by the voters or election judges as to whether the candidate was the contestee or his father.

Contestant Montague relies basically on Chapter 79 of the statutes pertaining to fourth class cities, particularly section 79.-030 which provides "* * * all city elections shall be held under the provisions of chapter 111, RSMo 1949, * * *." It will be noted that his petition is based entirely on violations of specific sections of Chapter 111 pertaining to the conduct of elections. Here lies the burr under the blanket, for the first words of that chapter, section 111.010 say: "The provisions of this chapter shall apply to all the election precincts in this state *but shall not* apply to township or village elections, to school elections, or *to any city election in cities of*

*the fourth class*, or in cities under three thousand inhabitants existing under any special law." So, Chapter 79, dealing with fourth class cities says that Chapter 111 shall apply to their elections, but Chapter 111, dealing with the conduct of elections, says it *shall not* apply to fourth class cities. This statutory conflict calls for an analysis of the origin and chronology of each section, and leads us to the conclusion that the latter repeals the former by implication.

The present section 79.030 was originally enacted in 1877, Laws of 1877, p. 173, art. 1, Sec. 3. It directed that elections in cities of the fourth class should be held under the provisions of the "general election law of the State." In subsequent revised statutes, the chapter numbers of "the general election law" were stated, and of course these numbers changed from one revision to another, until we find it in its present form, directing that such elections shall be held under the provisions of Chapter 111.

The so-called "general election law" originally referred to in the chapter dealing with fourth class cities, have not remained constant. In 1889 the vague, unexacting election laws then existing were cast aside and the more rigid and intricate Australian Ballot Law was adopted, and is now in force as Chapter 111. Upon the enactment of the new general election laws in 1889, they became applicable to cities of the fourth class by virtue of the pre-existing provisions of the 1877 statute declaring that such elections should be held under the provisions of the general election laws. It was so ruled by our Supreme Court in the case of State ex rel. Brown v. McMillan, 108 Mo. 153, 18 S.W. 784, and State ex rel. City of Tarkio v. Seibert, 116 Mo. 415, 22 S.W. 732. Those cases nullified elections held in the year 1891 in fourth class cities on the grounds that the provisions of the general election laws had not been complied with. Then in 1895, on the heels of these decisions, the General Assembly amended the general election laws by providing "This article shall not apply to * * * any

city election in cities of the fourth class * * *." The amendment concluded:

"Sec. 2. There being an election in cities of the fourth class on the first Tuesday in April of this year creates an emergency within the meaning of the constitution, and therefore this act shall be in force from and after its passage. * * * Approved March 16, 1895." Laws of 1895, p. 170.

We believe this evidenced a specific legislative intent to put fourth class cities beyond the pale of the general election laws, and left such elections subject only to the provisions of the Constitution and such ordinances as such cities might adopt. This excluding provision has been retained as a part of our general election laws, and is now a part of section 111.010.

■ The 1877 provision which by reference made the general election laws applicable to fourth class cities was not repealed specifically in 1895 when the general election laws were amended to exclude fourth class cities, and so the conflict has existed for sixty-one years. The two provisions are as repugnant as sin and virtue. Either the general election laws do apply to fourth class cities, as the Legislature has decreed since 1877, or they do not, as so decreed since 1895. We hold that the later exclusionary provisions of section 111.010 must prevail, and that the provisions of section 79.030 as to the applicability of the general election laws to fourth class cities has been repealed by implication. The rule of repeal by implication is set out in the case of State v. Mangiaracina, 344 Mo. 99, 125 S.W.2d 58, 60:

" ' "Where there is one statute dealing with a subject in general and comprehensive terms and another dealing with a part of the same subject in a more minute and definite way, the two should be read together and harmonized, if possible, with a view to giving effect to a consistent legislative policy; but to the extent of any necessary re-

pugnancy between them the special will prevail over the general statute. Where the special statute is later, it will be regarded as an exception to, or qualification of, the prior general one * * *." ' "

This was recently followed by this court in Bauer v. City of Berkeley, Mo.App., 282 S.W.2d 154, loc. cit. 160.

The portion of the original chapter 79 enacted in 1877 stating that the general election laws applied to fourth class cities was general and comprehensive in its nature. The amendment of the general election laws in 1895 excluding fourth class cities from their provisions was minute and definite, particularly in view of its emergency clause. Therefore, the latter enactment must stand and the former must fall. Contestant points to the case of Ousley v. Powell, Mo.App., 12 S.W.2d 108. That case involved an unsuccessful election contest in a fourth class city based on a violation of a portion of the general election laws. However, the statutory conflict was neither raised nor decided there, and we do not consider that opinion affects our decision that the provisions of chapter 111 do not apply to cities of the fourth class.

So, the acts complained of in Contestant's petition are not in violation of the statutory provisions alleged, for those provisions do not apply to the city of Rock Hill, and contestant does not claim these acts are in violation of the Constitution, any other statute or any ordinance. Thus, the petition is an empty shell.

■ ■ An election contest cannot be allowed on general principles, 29 C.J.S., Elections, § 249; nor do the broad powers of equity spread themselves to cover election contests. Boney v. Simms, 304 Mo. 369, 263 S.W. 412.

The case of Armantrout v. Bohon, 349 Mo. 667, 162 S.W.2d 867, involved an election contest for the office of county superintendent of schools of Marion County.

The general election laws did not apply to such election, and in dismissing the petition the Supreme Court followed its earlier opinion in Breuninger v. Hill, 277 Mo. 239, 210 S.W. 67, 69, saying: "A first essential, therefore, in the determination of the matter at issue, is whether any of the mandatory provisions of the Constitution or statutes regulating the rights of voters and the calling and conduct of the election, have been violated."

■ We hold, accordingly, that contestant's petition does not allege that the election in question was conducted in violation of any law shown to be applicable thereto, and the petition was therefore properly dismissed by the trial court. The judgment is affirmed.

ANDERSON, P. J., and MATTHES, J., concur.

On Motion for Rehearing or to Transfer to Supreme Court.

JAMES D. CLEMENS, Special Judge.

■ Contestant urges that Section 111.-650, dealing with partially fraudulent ballots, is not affected by the clause of Section 111.010 which excludes fourth-class cities from the operation of Chapter 111. He argues that Section 111.650 "was inserted in the corresponding article of Chapter 111 in the 1909 revision without legislation," and that therefore the exclusionary clause of Section 111.010 does not apply.

Contestant's rationale is (1) that prior to 1909 the present Section 111.650 dealing with partially fraudulent ballots was Section 7001, R.S.Mo.1899, which was a portion of the article dealing with general provisions of elections and was thus applicable to cities of the fourth-class; (2) that in 1909 this section, then renumbered

5909, was transferred without legislation into the article dealing with the Australian Ballot Law, which article by its express terms was not applicable to fourth-class cities; and (3) that the section should now be construed just as if the transfer from one article of the statutes to another article had never been made. This theory is supported by the cases of Kansas City v. Travelers Ins. Co., Mo.App., 284 S.W. 2d 874, loc. cit. 878, Dillbeck v. Johnson, 232 Mo.App. 743, 122 S.W.2d 412, loc. cit. 415, and State ex rel. Sharp v. Knight, 224 Mo.App. 761, 26 S.W.2d 1011, loc. cit. 1015. The essence of the rule in these cases is that a naked revision does not change the law, and that the force of a statute is to continue as originally enacted. The reason for the rule is that the *compilers* of revised statutes have no legislative power, and that there can be no change in a law "without legislative warrant or sanction." Corley v. Montgomery, 226 Mo.App. 795, 46 S.W.2d 283, 287 [13, 14].

■ However, our holding that Section 111.010 makes Section 111.650 inapplicable to fourth-class cities is not made on a construction based on a mere revision by the compilers, but rather on an enactment having specific legislative sanction. In R.S.Mo.1939, Section 11629 provided that the provisions of Article 7, Chapter 76 should · not apply to fourth-class cities. (Under the rule for which contestant contends, this exclusion would not apply to the section dealing with partially fraudulent ballots). By the enactment of H.B. No. 2049, the 65th General Assembly specifically repealed Section 11629 and enacted a new and different statute, Section 111.010 RSMo 1949, providing specifically that the provisions of "this chapter" shall not apply to. fourth-class cities. The section dealing with partially fraudulent ballots was a part of such chapter, and it was thereby made inapplicable to fourth-class cities.

Contestant's cited case of Kansas City v. Travelers Ins. Co., supra, acknowledges that the rule as to judicial construction disregarding revisions applies only in the *absence of legislative changes*. The case of State ex rel. Sharp v. Knight, supra [224 Mo.App. 761, 26 S.W.2d 1015], deals with the relocation of a section to another article merely "for convenience in arrangement and codification." The case of Dillbeck v. Johnson, supra, bases its reasoning on Corley v. Montgomery, supra, and Timson v. Manufacturers' Coal and Coke Co., 220 Mo. 580, 119 S.W. 565, which cases distinguish between changes made by the compilers and changes made by such legislative action as we find here.

Contestant argues that it is unreasonable to hold that in 1949 the Legislature intended to make the general provisions of Article 2, Chapter 76, R.S.Mo.1939, inapplicable to fourth-class cities, and that we should follow Section 79.030 and disregard the exclusionary provision of Section 111.010. If we were to follow this lead, we would thereby again make all the provisions of the Australian Ballot Law applicable to fourth-class cities. This would truly be "judicial legislation", and would defy the Legislature's enactment of 1895 whereby such law was made inapplicable to such cities. This we may not do.

Contestant also now urges for the first time that the Supreme Court has exclusive jurisdiction in cases involving "title to any office under this state." Article V, Section 3, Mo.Const.1945. The office of mayor is not "an 'office under this state.' " State at inf. of Dalton, ex rel. Tucker v. Mattingly, Mo.Sup., 268 S.W.2d 868, 869.

ANDERSON, P. J., and MATTHES, J., concur.