MAGGIE   BREUNINGER   et   al.,   Appellants,   v.
. THOMAS J. HILL et al., Judges of County Court.

In Banc, March 15, 1919.

1. **ELECTION**: Irregularities.  An election, at which the voters had
   notice of all changes in the usual voting places, conducted in a
   peaceable and quiet manner, free from fraud, coercion or any
   interference with the rights of voters, and at which no voter was
   denied an opportunity to freely and fairly cast his ballot, followed
   by an honest return, is not invalid for irregularities in calling
   or conducting it.

2. ——: Constitutional Objects.  In the holding of an election two
   well defined objects are recognized by the Constitution, namely,
   to afford legal voters a free and untrammeled right to vote, and a
   correct record of a return of the votes.

3. ——: Mandatory Regulations: Opportunity for Fraud.  If no
   mandatory provision of the Constitution or statutes regulating
   the rights of voters and the calling and conduct of the election
   is violated, irregularities which do not deprive voters of the
   right to freely and fairly express their will, although they may
   be such as to invite and afford an opportunity for the concealment
   of fraud, will not render the election void, no fraud being charged
   or shown.

   *Held*, by WOODSON, J., dissenting, with whom FARIS, J., concurs,
   that an election required to be held under the Australian
   Ballot Law which is held in total disregard of the requiremnts
   of that law is invalid, and cannot be held to be valid simply
   because no fraud is shown.

4. ——: Secret Ballot.  In the utter absence of fraud, or unfair
   efforts to influence the voter, a ballot not prepared and cast in
   secret is not invalid.

5. ——  :——: Facilities: Absence of Booths.  If a ballot was
   very short, containing but a single proposition, and its preparation
   in secret did not require those facilities for secrecy which a rea-
   sonable construction of the statute render necessary in the prepara-
   tion of a blanket ballot at a general election, and there was an
   entire absence of any attempt to influence voters, the mere absence
   of voting booths wherein voters could have prepared their ballots
   did not render the election void.

6. ——: ——: Polling Places: In Cities.  A special election to be
   held throughout a county embracing a city of the first class, and all

elections in cities of the first class, are required to be held under the general laws, and they contain no mandatory requirement for the fixing of polling places, and therefore the effect upon the validity of the election of changes in such places must be determined by the facts of the particular case.

7. ——— :———: ———: **Inclement Weather.** Where the usual polling places for general elections are canvas tents, changes by the county court, on account of inclement weather, to near-by buildings, for a special bond election, notice being given to all voters, and no voter encountering any difficulty in finding his voting place or being hindered in his right of suffrage, did not invalidate the election, but the statute under such circumstan. will be held to be directory.

8. ———: ———: **Number of Judges and Clerks: Bond Election.** The law governing the appointment of judges and clerks of election is directory, and the appointment of a number less than the statute designates will not nullify the result of votes freely cast and honestly counted. Besides, the Act of 1913, Laws 1913, p. 327, amended the existing statute so as to require only two judges and two clerks for each precinct at a special election for the purpose of voting bonds for road construction, and the Act of 1917, Laws 1917, p. 471, which provided that bond elections shall be held in the same manner as general elections, had reference to the general law as it then existed, including the amendment of 1913, and consequently the appointment of two judges and two clerks for the special bond election held in 1918, instead of six judges and six clerks, was in strict compliance with the existing statute.

9. ———: ———: **Notice of Registration: No Entry of Record.** Failure of a county court to cause to be entered of record an order directing the clerk to give notice of a supplemental registration of voters did not invalidate an election, where the clerk in his official capacity published the notice in conformity with the statutory requirements.

Appeal from Buchanan Circuit Court.—*Hon. Alonzo D. Burnes,* Judge.

AFFIRMED.

*B. J. Woodson, Vinton Pike* and *W. B. Norris* for appellants.

(1) There was no legal supplemental registration. R. S. 1909, sec. 6070. (2) The election was void be-

cause held at polling places other than and long-distant from the regular legal polling places in the City of St. Joseph.  Laws 1917, p. 471, sec. 84.  (3)  The election was void because no booths, compartments, separate places, or stalls were erected or used to afford the voter a place to make out his ballot in secrecy in the City of St Joseph and because no railings were placed about the judges.  R. S. 1909, secs. 5897, 5901;  Laws 1913, p. 328, sec. 5900.  (4)  The election was void because held in total disregard of the Australian Ballot Law.  R. S. 1909, secs. 5897, 5901, 5919;  Laws 1913, p. 328, sec. 5900;  Laws 1917, p. 471, sec. 84;  State ex rel. Miles v. City of Macon, 193 Mo. App. 306, 269 Mo. 151;  State ex rel. City of Tarkio v. Seibert, 116 Mo. 415;  Gaston v. Lamkin, 115 Mo. 20;  State ex rel. City of Marshall v. Hackmann, 203 S. W. 960.

*Strop & Mayer* for respondents.

(1)  There being no fraud charged and all of the evidence affirmatively showing that the election was free from fraud, duress, intimidation or wrong-doing of any character, and that it resulted in a full, free and fair expression of the will of the people, the absence of stalls did not vitiate the election.  Yonkers v. Susong, 156 N. W. 25;  Allget v. Callahan, 144 S. W. 1166;  Links v. Anderson, 168 Pac. 605;  Perry v. Hackney, 90 N. W. 483;  Moyer v. Van De Vanter, 29 L. R. A. 670;  Skelton v. Ulen, 217 Mo. 383;  State ex rel. City of Marshall v. Hackmann, 203 S. W. 960;  Carabajal v. Lucero, 158 Pac. 1088;  9 R. C. L. 1003, sec. 102;  McCrary on Elections (4 Ed.), sec. 225.  (2)  The fact that a number of polling places and registration places were not at the places fixed by ordinance as polling places, especially since notice of the change was given every voter, will not render the election void.  State ex rel. Canton v. Allen. 178 Mo. 555;  State ex rel. v. Westport, 116 Mo. 582;  Light & Magnetic Co. v. Lebanon, 163 Mo. 246;  Bowers v. Smith, 111 Mo. 45;

Curlan v. City of Devil's Lake, 25 N. Dak. 207, 141 N. W. 756, Ann. Cas. 1915 C, p. 624; Smith v. Hackett, 98 Atl. 140; State ex rel. v. Shanks, 125 N. W. 122. (3) The statute required only two judges and two clerks. Laws 1913, p. 327. "The Good Roads Law" of 1917 carried a provision that bond elections for building roads under that act should be held in the same manner as general elections are held and that no person should be permitted to vote who would not be qualified to vote at a general election held on that date. Laws 1917, p. 471, sec. 84. The Legislature did not have in mind the general election law as originally passed merely, but the general election law as amended from time to time. As amended in 1913, that law provided that at bond elections only two judges and two clerks should be required. But, even if the statute required six judges, the requirement was merely directory ,and a failure to appoint the full number of judges, not having affected the merits of election, will not invalidate the election. Sanders v. Lacks, 142 Mo. 254. (4) The notice of supplemental registration, published by the county clerk over his signature as clerk, attested by the seal of the court was sufficient. The notice was not rendered less effective simply because the court, having made an order for the supplemental registration, did not enter of record an additional order directing the clerk to publish the notice. State ex rel. City of Memphis v. Hackmann, 273 Mo. 695; McCrary on Elections (4 Ed.), sec. 178; Demaree v. Johnson, 150 Ind. 419; State v. Doherty, 16 Wash. 382; DeShon v. Smith, 10 Iowa, 212; Jordan v. Hayne, 36 Iowa, 9; Phillip v. Town of Albany, 28 Wis. 340; 9 R. C. L. 993, sec. 15. (5) The fact that some of the voters prepared their ballots in the presence of the judges does not invalidate the election. Absent fraud, such votes should be counted; this, too, even in a case where such votes determine the result of the election. Hall v. Schoenecke, 128 Mo. 661; Altgelt v. Callahan, 144 S. W. 1166.

WALKER, J.—In January, 1918, an election was held in Buchanan County to determine if a bonded indebtedness of two millions of dollars would be incurred, to provide funds for the building of roads in said county. At this election there were 7784 votes cast. Of this number, 6342 were in favor, and 1442 against the incurring, of the indebtedness. Before the bonds authorized by the election were issued by the county court, in April, 1918, Maggie Breuninger, one of the plaintiffs, for herself and others similarly situated, brought this suit in the circuit court of Buchanan County against the county judges to enjoin them from issuing said bonds. Others appeared, and on their application, were made parties plaintiff. Defendants entered their appearance.

The petition of the plaintiff, Breuninger, as well as those of the others, alleged that the county judges were threatening to issue bonds in the sum of two millions of dollars payable in twenty years, under the authority of the election held in January, 1918; that their proposed action was unauthorized because of the invalidity of the said election, in that it was held (1) at other than the usual polling places; (2) that only two judges and clerks were appointed and acted at each voting precinct; (3) that no order was made and entered of record by the county court calling said election; (4) that no order was made and entered of record authorizing the pretended supplemental registration in said county; (5) that the pretended supplemental registration was illegal because not held at the regular polling places in the City of St. Joseph; and (6) that the election was held in total disregard of the Australian Ballot Law.

Defendants' answer admitted their official character; that unless restrained, they would issue the bonds referred to; that bonds, if issued, would constitute a county indebtedness; that the plaintiff, Breuninger, was a resident assessed taxpayer of said county; that St. Joseph was a city of the first class and contained more than

25,000 and less than 100,000 inhabitants; and that only two judges and two clerks for each voting precinct were appointed by the county court and served at each voting precinct during said election.

For further answer, defendants alleged the presentation to the county court of the petition for the calling of the election for the submission to the voters of a proposition to issue bonds in the sum of two million dollars for road purposes; that pursuant to said petition, an order calling an election for January 24, 1918, was made and entered of record December 28, 1917; that an order was made by the county court for a special registration for June 12, 1918, and was entered of record on December 31, 1917; that the required notice of said registration was given; that the places used for registration were the same places used as polling places at said election; that in some precincts the places used as polling places were not the same places as the usual polling places, and that where the same places were not used the places used were described, and the reason for their use stated; that notice of the location of all the polling places was given to the voters by publication in the daily newspapers published in the City of St. Joseph, and by mailing a printed notice of any changes to every voter in the City of St. Joseph, designating the location of the polling places for the purpose of this election; that it was the custom of the county to use canvas booths as polling places in the City of St. Joseph; that because of the inclement weather, it was not possible to find persons who would serve as election officials, if such booths were used; that because of this fact, the defendants secured such places as could be obtained as polling places in such precinct; that the utmost effort was made to find and secure such places as would be suitable for an orderly and peaceable election, and as would afford voters of each precinct a fair opportunity to vote secretly and free from duress or interference; that there were thirty precincts in Buchanan County outside of the City of St. Joseph; that in all of said precincts the county had per-

manent buildings which were used as polling places, and that said buildings were. so· arranged as to comply in the minutest detail with the requirements of the Australian Ballot Law, and were used at such places at said bond election; that none of said defendants have any personal interest in said election or the result thereof; and that the acts performed by them were in good faith and an honest endeavor to have a fair election in accordance with the provisions of law.

The reply was a general denial to the new matter contained in the answer.

On the 28th day of December, 1917, during the regular November Term of the county court of Buchanan County, a petition was presented to said court, request-**The Facts.** ing it to call a special election for the submission to the qualified voters of said county a proposition to issue bonds in the sum of two million dollars for grading, constructing and paving the roads. On said 28th day of December, the court entered of record an order calling said election for January 24, 1918; and on the 31st day of December, 1917, the court made an order for a supplemental registration, to-wit: ''Now, on this day it is hereby ordered by the court that a supplememental registration be held in the City of St. Joseph, Mo., one day, Saturday, June 12, 1918, from 8 o'clock A. M. to 9 o'clock P. M., in each of the voting precincts of the city.'' ·

No other order was made fixing places for the supplemental registration, nor was an order made directing the clerk of said court to give notice of such registration. However, the clerk did publish in the daily newspapers in the City of St. Joseph, for the requisite number of days, a notice of said supplemental registration. This notice fixed the places for holding the registration in each precinct, and in a number of the precincts the place thus fixed was other than the place designated by ordinance. The election was held, however, and the polling places used were the same as those where the supplemental registration had been held.

For many years it had been the custom in the city of St. Joseph to erect canvas tents for polling places, and these tents contained conveniences for the conducting of elections in compliance with the Australian Ballot Law. At this election none of these tents were erected or used, but the election was held at such polling places as had been selected by the county court, of which the voters had notice.

There were 87 voting precincts in Buchanan County; 57 of these are within the corporate limits of the City of St. Joseph, and 30 in the County of Buchanan, outside of the city. Within the city, there were 4077 votes cast for the bonds, and 1026 cast against them. Outside of the city there were 2265 votes for the bonds and 416 against them. The foregoing constitutes the material portions of the evidence adduced by plaintiffs.

The evidence on the part of the defendants shows that the petition presented to the county court requesting the calling of the election was signed by more than 3000 residents of the county; that the order made by the court for said election was published as a notice of same by the county clerk; that the notice of special registration with the proof of its publication showed that it was published the requisite number of days, and that it had been regularly filed with the clerk of the county court. In 34 of the precincts in the city of St. Joseph, the county court did not provide booths within which the voter could retire to prepare his ballot. This failure was due to the inclemency of the weather. In furtherance of the attempt of the court to afford voters an opportunity to cast their ballots, the county judges selected other polling places than the canvas booths, and the places thus selected were as near the regular voting places as it was possible to have them. That the conditions surrounding the places selected were such as to enable the voter to readily find the polling place and to cast his ballot free from duress or other influence calculated to interfere with the free exercise of this right, and that voters had notice of all changes made.

That at each precinct the election was conduct in a quiet and peaceable manner, and no voter was denied an opportunity to freely and fairly cast his ballot.

I. It appears that it is not fraud, duress, or any interference with the rights of voters, of which complaint is made. Nor is the correctness of the result questioned; but the burden of the plaintiff's contention is **The Issue.** that the calling of the election and the conduct of the same were characterized by such irregularities as to render it invalid. Recognized by the Constitution (Art. VIII.), the regulation of the right of suffrage whether it be as to the form of the ballot, the manner in which it is required to be cast, or the character of the polling places and conduct generally of the election, has two well defined objects; one, to afford the voter the free and untrammeled right to vote; and the other that a correct record of the return of the votes may be made. A first essential, therefore, in the determination of the matter at issue is whether any of the mandatory provisions of the Constitution or statutes regulating the rights of voters and the calling and conduct of the election have been violated. If so, then the contention of the plaintiff's should be sustained. Otherwise, however, if it has been shown despite irregularities, that a free and fair opportunity was afforded the voters to express their will, and no question has arisen as to the correctness of the return of the votes and the result of the election. While it may be admitted that irregularities invite and afford opportunities for the concealment of fraud, and that a conformity with regulatory statutes is necessary in many instances to procure exactness of results, the end for which all rules are made and regulations prescribed, is a free ballot and a fair count. This conclusion in not intended in disregard of any legislative provision which has clearly been defined to be necessary to the validity of an election; but to provisions which have not been so defined, the violation of which is not shown in any manner to have influenced

the conduct of an election, or rendered the result doubtful. A contrary ruling would not be in harmony with the purpose of regulatory statutes; would subordinate substance to form, the end to the means, and thus defeat the vital purpose for which elections are authorized. [Nance v. Kearbey, 251 Mo. 374.]

II.    Complaint is made that voters were not afforded an opportunity at certain precincts to cast a secret ballot.    This contention is based on the assumption that the absence of booths at certain

Secrecy of
Ballot.    precincts rendered a secret ballot impossible.

Notwithstanding the absence in the City of St. Joseph of booths in the conduct of this election, there is no instance in evidence where a single voter could not, if he so desired, have prepared and cast his ballot in the utmost secrecy as to the nature or result of his vote. The ballots were exceedingly brief, could be read at a glance, and were couched in the following words: "For incurring of county indebtedness for road and bridge purposes. Against incurring of county indebtedness for road and bridge purposes. (Erase the clause you do not favor)."

Embracing but the one subject, the ballots were not difficult to understand, and the voter was enabled to express his will with two strokes of a pen. Such a ballot, encompassed as it might have been, within the palm of the voter's hand while preparing it to be cast; did not require that paraphernalia as an auxiliary of secrecy which a reasonable construction of the statute might require in the preparation of a blanket ballot at a general election which might involve the selection of presidential electors, state and local officers, and the approval or rejection of constitutional amendments.

Admitting, therefore, that the Constitution in providing for elections by ballot, means a secret ballot, and the fact that the law provides means to encourage and facilitate the preparation of such ballot, it does not follow in the utter absence of any fraud, unfairness or

other effort made to influence the voter, that a ballot not prepared and cast in secret is invalid. On the contrary, although the facilities for secrecy are thus afforded, it could not in reason be held that if a voter tendered a ballot prepared and furnished to him under the requirements of the law, his disregard of the law in regard to its secret preparation or even his announcement as to the manner in which he had voted, would invalidate his vote.

Regulations, therefore, as to the right of the voter to a secret ballot are sustained on the ground that it secures him freedom in the exercise of his franchise and reduces to a minimum the incentive to fraud. Such is the trend of the ruling in Ex parte Arnold, 128 Mo. l. c. 261, in harmony with other cases on the same subject. Where, however, as here, there is evidence that the voter was afforded every opportunity to freely cast his ballot without disclosing the nature of same and there was an utter absence of any attempt to influnce him in so doing, a statute requiring the erection of booths should not be held mandatory, because not a necessary condition precedent to the secrecy of the ballot.

It may be admitted as a general proposition, as was held in Hall v. Schoenecke, 128 Mo. l. c. 669, that where it is necessary to secure an absolutely secret ballot and thus protect the right of the voter in the free expression of his choice of candidates to be voted for, uninfluenced by fear or intimidation, that not only the requirement as to booths, but others which, if disobeyed would necessarily defeat a fair election, should be held to be mandatory. In the case at bar, a failure to comply with the requirement complained of not only did not have, but could not reasonably have had, any obstructive or unfair influence. The requirement under such circumstances should be held to be directory. Such a construction does not violate the spirit of the law, is consonant with justice, and is affirmative of the free expression of the will of the people.

We said no more than this in State ex rel. Miles v. Ellison, 269 Mo. .157, where it appeared that not only were no booths provided, but that no facilities were furnished the voter to enable him to prepare his ballot free from observation and coercion.   This, as we have shown, was not the case at bar; but there was, as stated in the Ellison case, as an exception to the ruling that the statute be construed as mandatory, but a deviation from the method marked for the holding of an election not sufficient to violate the spirit and general purpose of the law (Sec. 5897, R. S. 1909), and thus render the result invalid (Skelton v. Ulen, 217 Mo. 383).

III.   It is urged that in certain precincts the election was held at unauthorized places; that is, it was not held at the same polling places where general elections were required to be held as prescribed by the statute (Laws 1917, sec. 84, p. 471), the specific ground of error being that the physical character of the places to which the polls were changed was of such a nature that the requirements of the law could not be carried out.   There is no evidence to sustain the reason thus urged in support of the contention.

<span style="margin">Polling Places.</span>

The facts disclose that where changes were made, the same were rendered necessary on account of the inclemency of the weather; that all voters were notified of the same; and no contention is made that any voter encountered any difficulty in locating his polling place, or that he was by reason of such change, hindered or obstructed in the right of suffrage. The contention, therefore, must resolve itself into a question as to the construction of the statute. If it seems that no exigency will authorize a change, although it be shown that no obstacle was thereby interposed as to the holding of a fair, free, and full election, then the plaintiffs' contention must be upheld.

There is no general statute prescribing the manner in which polling places shall be fixed by the county courts of the several counties.   The nearest approach

thereto is found in the authority conferred upon such courts to establish election precincts, [Secs. 5801, 5802, R. S. 1909.] The succeeding section (5803) impliedly confers upon them the power of fixing the polling places in providing that, upon their failure so to do, the same may be designated by the sheriff. The election here under review having been held throughout Buchanan County, was not to be regulated by the statute regarding elections in cities of the first class. This question, however, is foreclosed for another reason; that all elections in cities of the first class, of which St. Joseph is one, are required to be held under the general laws of the State (Sec. 8564, R. S. 1909). Consequently, in construing the statute (Laws 1917, supra) authorizing a county court to submit a proposition to voters for the creation of an indebtedness for the building of roads, we are not confronted with a mandatory statute in regard to the fixing of the polling places, a violation of which would render the election invalid. The effect, therefore, upon the election, by whatever changes were made, must be determined by the facts applicable to this particular case. There is no evidence of any obstruction or hindrance caused by the county judges in making the change which in any wise interfered with the expression or the true sentiment of the voters. Under this state of facts, it does no violence to law, but is promotive of the public will, that the statute be held to be directory. In thus holding, we are not unmindful of the importance which attaches to a specific designation of the polling places, because this notified the voters where their votes can be cast. But that reason for the requirement, however, loses its force in the present case, in the face of the facts that the voters were not only apprised of the changes, but encountered no difficulty in casting their votes notwithstanding the same. Many cases from other jurisdictions are cited by plaintiffs in support of this contention, but an analysis of them, if carefully made, will show that in each instance there was either present a mandatory statute, or that the changes made interfer-

ed with the freedom of action of the voter and, as a consequence, prevented a fair election.

We have given express judicial approval to the conclusion we have here reached. First, in State ex rel. Canton v. Allen, 178 Mo. l. c. 576, in which we held that where there was no pretense that the election was fraudulent, or that it was not the expression of the will of the people, that a change in the polling places was nothing more than an irregularity, and should not be held to invalidate the election (citing cases). This ruling has been subsequently affirmed in the recent case of State ex rel. Memphis v. Hackmann, 273 Mo. l. c. 695.

The Court of Appeals, for like reasons, hold that the contention here made, under facts parallel with those in the instant case, to be without merit. [Bauch v. Cabool, 165 Mo. App. 494; State ex rel. Fahrman v. Ross, 160 Mo. App. l. c. 693; O'Laughlin v. Kirkwood, 107 Mo. App. 302.]

IV. There is no merit in the contention that the election was invalid because the county court appointed but two judges and two clerks for each election precinct. The general law, which required the appointed of six judges and six clerks, was amended in 1913 (Laws 1913, p. 327), so far as regards the manner of holding special elections for the purpose of voting bonds for road purposes, it being expressly provided by the amendment that only two judges and two clerks for each voting precinct was necessary. The act approved April 9, 1917 (Laws 1917, p. 471), which provides that bond elections shall be held in the same manner, etc., as general elections, has reference to the general law as it then existed which includes the amendment of 1913, supra, with which the action of the county court was in accord. Aside from this, the law governing the appointment of judges and clerks is clearly directory, and courts will not nullify the result of votes honestly cast and counted, although the statute has not been strictly complied with, [Sanders v. Lacks, 142 Mo. 255.]

*Judges and Clerks.*

V. It is urged that the failure of the county court to cause to be entered of record an order directing the clerk to give notice of the supplemental **Notice of Registration.** registration invalidated the proceeding. This, notwithstanding the fact that the clerk in his official capacity published the notice in conformity with the requirements of the law. The notice having been published, no voter could have been deprived of an opportunity to register, and the basis of the contention must rest wholly upon the technicality of the absence of the record entry. This, in the presence of affirmative proof that no injury arose from the omission, affords litle reason for the sustaining of this contention. The will of the people, fairly expressed at the polls, ought not to be rendered ineffectual by the interposition of objections which go merely to the oversight or unintentional omissions of officers charged with purely administrative duties. There in nothing in Section 6070, Revised Statutes 1909, concerning days of registration and notice of same, which militates against the conclusion that the action of the county court in regard thereto was not in substantial compliance with the law. While this section requires that registrations shall be held at the places of voting, established by the county court, we have shown that this requirement is directory in discussing the location of polling places, and ample notice having been given and no ground of complaint coming from the voters, there remains nothing in this regard upon which to base a ground of complaint meriting a reversal of the judgment.

VI. The record discloses that the required petition for the special election was filed with the county court; that a formal order therefor was made and **Other Assignments.** entered of record; that notice of same was published as required by law. These grounds of complaint, although presented by the petition, are not pressed upon our consideration, and if so, would be held without merit in the face of the facts. Hence they need not be discussed.

VII.   In addition to the lack of substantial error in any of the assignments made by plaintiffs, we are confronted by this fact, that in thirty pre-cincts outside of the City of St. Joseph, and in twenty-three therein, in which there was no issue of irregularity other than in the number of judges and clerks, which we have shown to be without foundation, there were 3559 votes cast for the bonds, and 849 against them.   The statute provides that if it appears that two-thirds of the qualified voters voting at the election favor the issuance of the bonds, the court shall order same. [Laws 1917, p. 471, sec. 85.] The affir-mative result in the instant case shows that more than four to one, of the votes cast in precincts free from irreg-ularities, were in favor of the issuance of the bonds. Under this state of facts, the holding as to the lack of substantial error, in addition to being supported by precedents, is in accord with the express will of the people and constitutes such an interpretation of the election laws as comports with the administration of justice.

*Conclusiveness of Result.*

In view of all of which, the judgment of the trial court is affirmed, and it is so ordered.

*Bond, C. J., Williams, Graves* and *Blair, JJ.,* concur; *Woodson, J.,* dissents in a separate opinion, in which *Faris, J.,* concurs:

WOODSON, J. (dissenting).—While I fully concur in the views expressed in the majority opinion to the effect that mere irregularities should not nullify an elec-tion fairly and honestly held, yet I do most earnestly dissent from the proposition that, an election which the law requires to be held under the Australian Ballot Law, if held in total disregard of that law, is a valid election.   That the Australian Ballot Law applies in this case is not denied, and that it was totally ignored is con-ceded, yet it is held that such an election is valid. This is strange doctrine to me, since there is no other law in existence in this State governing elections of any kind,

except school and perhaps some other minor elections; therefore, the conclusion is irresistible that this election was held under no law whatever—only a voluntary election held by common consent of those who participated therein. I say this, because, prior to the enactment of the Australian Ballot Law, we had an elaborate system of laws governing all kinds of elections, but upon its enactment it superseded all of those laws, except as previously stated.

Moreover, if this election is valid, then the general elections for the election of State, Federal, and county officers may be held in total disregard of the Australian Ballot Law, and yet be valid, if no fraud is shown, which all know would be an almost impossible thing to do.

For the reasons stated, I dissent from the majority opinion

*FARIS, J.*, concurs herein.