Tom Phelps, Appellant-Contestant, v. Frank Harold Fenix, Respondent-Contestee.—134 S. W. (2d) 84.

Court en Banc, December 5, 1939.

*R. A. Mooneyham, Geo. B. Lang* and *Jack Fleischaker* for contestant.

442

*Paul E. Bradley, Nelson B. Evans* and *McReynolds & Flanigan* for contestee.

ELLISON, J.—The appellant Phelps was the Democratic nominee for county collector of Jasper County in 1938, and was defeated by the respondent Republican nominee Fenix in the general election,

according to the official returns cast up on November 12, 1938. The vote was 12,551 for Fenix to 12,110 for Phelps, a difference of 441. Phelps instituted an election contest in the circuit court, where, upon a recount by the county clerk under Section 10356, Revised Statutes 1929 (Mo. Stat. Ann., p. 3772), the vote was certified as 12,783 for Fenix to 12,117 for Phelps thus increasing respondent's majority to 666, and judgment was entered accordingly.

The first of appellant's two main assignments of error on this appeal arises out of this fact. Appellant prayed in his petition that the ballots cast in 30 specified precincts be reopened and that he and the respondent and their attorneys be permitted fully to examine the same and make a comparison thereof with the poll list and registration list. The court order directed the county clerk to open, count, examine and compare the ballots with the poll list in the presence of said parties, but did not include the registration list. It continued with a cautionary charge that since there was no contention any person who voted was not qualified to vote or that any markings were added to or changed on said ballots, it would be unnecessary "to determine how any individual voter cast his vote either for the office of collector or any other office."

Appellant objected at the time and contends here that the order was prejudicially defective because it failed to direct the county clerk to compare the ballots not only with the poll books, but also with the *registration books, ballot stubs and other papers and documents,* in accordance with Section 10354, Revised Statutes 1929 (Mo. Stat. Ann., p. 3770), as construed by Gantt v. Brown, 238 Mo. 560, 142 S. W. 422. The respondent answers that the court order was broad enough in view of the allegations of appellant's petition; and that an examination of the registration lists, ballot stubs and any other papers and documents outside of the poll books was unnecessary for reasons to be stated later in discussing appellant's second assignment.

In the case of Gantt v. Brown, supra, 238 Mo. l. c. 566-568, 581, 142 S. W. (2d) l. c. 424(2), 429, cited by appellants, the ballots of certain voters were challenged on the ground that they were aliens; also it was claimed the ballots of certain voters who testified they voted for Judge James B. Gantt, had been changed by scratching out his name. The immediate legal point presented was whether a *subpoena duces tecum* should be issued by the special commissioner to whom the case had been referred, so that the poll books might be brought in and the ballots of the voters in question identified, thereby disclosing how they voted, so far as shown on the face of such ballots.

The case held that where actual or legal fraud is *charged,* such disclosures may be made even though there has been no preliminary, prima facie showing of fraud by evidence independent of the poll books and ballots, themselves. The principal opinion was by GRAVES,

J. There were two concurring opinions, one by LAMM, J., and the other by WOODSON, J. All these received the carrying vote of four judges, KENNISH and BROWN, JJ., not sitting and VALLIANT, C. J., dissenting. The concurring opinion of LAMM, J., summed up the holding of the court as follows: "We put the investigation of fraud in an election case precisely on the footing of any other investigation of fraud, so far as we can. Our ruling does not mean that the secrecy of the ballot should be exposed, except insofar as it may be absolutely necessary, under the allegation of the pleadings in an election contest, to show fraud, if any. . . ." Judge WOODSON's concurring opinion further held the foregoing rules apply also to the registration books and all other papers and documents required by law to be made and preserved. It is this latter holding which is stressed by appellant in the instant case.

We must, therefore, summarize appellant's long notice of contest and petition to see what charges were made. They alleged that in 30 designated precincts in Jasper County at said election a number of votes severally ranging from 50 to 100, or more, were by inadvertence, mistake or fraud on the part of the judge or judges of election counted for respondent when they should have been counted for appellant; and that in said several precincts the votes or ballots were not counted by all the judges of election but by only one of them in the absence and out of the hearing of the others.

It was further charged that in sixteen precincts in the City of Joplin the names and street numbers of no voters whose ballots were counted for respondent were entered upon the poll books; that the respective serial numbers of such voters were not appropriately placed opposite their names on the poll books; that in each of said precincts a larger number of ballots were cast for appellant than were counted for appellant; that in several of said precincts voters appeared at their respective voting places and offered and undertook to cast their votes for appellant, all of which votes the judges of election refused to receive or accept; that in several of said precincts the judges and clerks did not count the legal ballots cast for the office of county collector, and did not correctly certify and return the actual number of legal votes so cast, but, on the contrary, they counted in favor of respondent not less than 800 votes above the number actually cast for him; that there were a number of votes in each of said precincts which should have been counted for appellant that were wrongfully rejected as being mutilated; that in precinct 21 of said City of Joplin one Ed Hansford was allowed to act as judge of election, and he alone read off the ballots, when he was not a legal voter and was not qualified to act as such judge.

The notice and petition further charged there was such gross irregularity, disorder and intimidation of voters and election officials during the election in Jasper precinct of Preston township that it

was impossible to ascertain the true result thereof in that precinct, in consequence of which the whole returns thereform should be disregarded. The official returns from this precinct showed 186 votes cast for appellant and 219 for respondent, a majority of 33 for respondent. The recount by the county clerk showed 174 votes for appellant and 301 for respondent, a majority of 127 for respondent. No objections to this recount were interposed by appellant when it was made.

I. We are unable to find anything in the foregoing allegations requiring a broader order than the trial judge entered. They did not charge that any voter for appellant was disqualified for failure to register or other reason, or that any ballot cast for appellant had been changed to read against him. In this respect the instant case basically differs from Gantt v. Brown, supra. The notice and petition did say a number of ballots cast for appellant in each precinct in Joplin had been wrongfully rejected as mutilated, but did not allege any fact implying the error in this regard was not such as could be ascertained from an examination of the ballots themselves. The gist of the charges was that there had been a wrongful *count* of the ballots, either through inadvertence, mistake or fraud, by one election judge instead of all; that proper entries had not been made on the poll books; that certain voters were denied the right to vote; that one judge who was disqualified alone did the counting in one precinct; and that the returns should be thrown out in one precinct because of gross irregularity, disorder and intimidation. The order permitted a comparison of the ballots with the poll books so far as that might be done without disclosing how any individual voter voted. This was enough to cover all the charges in the notice and petition except those wholly dependent on extrinsic parol evidence. We shall consider further the question as to how full a showing should have been required on matters concerning the registration of voters, in our discussion of the next assignment.

II. After unsuccessfully presenting a motion to dismiss the proceeding and a demurrer to the petition, respondent filed answer on January 16, 1939. Appellant then served an amended notice of contest and filed an amended petition on or about February 2, 1939. These incorporated a new allegation that under the law voters of the City of Joplin must be registered; that no ballot cast in said city at an election for county officers should be counted unless the voter's registration number, serial number and the initials of two judges be placed thereon in obedience to Sections 10309, 10314 and 10315, Revised Statutes 1929 (Mo. Stat. Ann., pp. 3750, 3753), and Section 10310, Laws 1933, pages 225, 229 (Mo. Stat. Ann., pp. 3751, 3752); that in each of said sixteen precincts in Joplin more than 100 ballots

were wrongfully and fraudulently counted for respondent, from which the aforesaid numbers and initials were omitted. Respondent moved that this added allegation be stricken out because it alleged facts which could not be included by amendment because they were not covered by the original notice of contest. This motion being overruled and exceptions saved, respondent filed an answer to the amended petition which, among other things specifically denied that appellant received a majority of the legal votes cast at said election. He did not, however, give notice of a counter-contest as provided by Section 10341, Revised Statutes 1929 (Mo. Stat. Ann., p. 3767), or challenge affirmatively in his answer the vote cast for appellant.

At the trial below appellant offered no evidence, but stood on the pleadings and the recount made by the county clerk. The latter showed there were five precincts in Joplin, in which 1520 votes were cast for appellant and 1632 for respondent. In none of these were the registration numbers of the voters written on the ballots, as required by Section 10315, supra. There was no showing of any other defect in these ballots, such as the omission of serial numbers or judges' initials. If all these votes were counted (as they were by the county clerk) or if all were rejected, respondent would be the winner either way, though in the latter event his majority would be reduced to 554. But appellant contends the 1632 votes cast for respondent should be thrown out because he (appellant) has challenged them in the instant contest, whereas the 1520 votes cast for him should be counted notwithstanding they bore no registration number, because respondent did not affirmatively challenge them by filing a counter-contest under Section 10341, Revised Statutes 1929 (Mo. Stat. Ann., p. 3767).

Respondent urges three propositions: (1) that appellant is not entitled to raise the question because it was not covered by his *original* notice of contest, which Section 10339, Revised Statutes 1929 (Mo. Stat. Ann., p. 3764), requires to be served on the adversary party within 20 days after the official count; (2) that Section 10315, supra, requiring the voter's registration number to be placed on his ballot by the clerks of election, is repealed by implication by Section 10300, supra, Laws 1933, l. c. pp. 227, 228 (Mo. Stat. Ann., l. c. pp. 3744, 3745), which provides no writing shall be indorsed on the ballot except the number showing the voting order and the initials of the two judges, and that the registration number shall be written on the *stub* from which the ballot is torn; (3) that in any event all the ballots cast for appellant and respondent, respectively, in these five precincts should be counted or else all should be rejected.

For the purpose of clarifying the law, respondent earnestly requests us to decide whether Section 10300, supra, Laws Mo. 1933, page 225, repealed Section 10315, supra, by implication. Without

meaning to indicate any view to the contrary, we can only say we do not feel at liberty to do so. It makes no difference in this case whether Section 10300 or Section 10315 controls, because we are convinced all the ballots must be treated the same way—that is, either counted or not counted—and on either theory respondent was elected. The position taken by the contestant in Timmonds v. Kennish, 244 Mo. 318, 320, 149 S. W. 652, 653, where the same question was involved, was that none of the ballots should be counted. Appellant takes the same position in this case with reference to the vote in Jasper precinct of Preston township where the election was allegedly impeded by gross irregularities, disorder and intimidation of voters. Nevertheless, appellant received 174 votes in that precinct and respondent did not challenge them.

Arguing against the above conclusion appellant contends, as stated, that if respondent desired to challenge the votes cast for appellant in the five precincts mentioned he should have filed a counter-contest under Section 10341, supra, because the election contest statutes are a code unto themselves, as has been held in numerous cases decided by this court, such as State ex rel. Hancock v. Spencer, 166 Mo. 279, 285, 65 S. W. 984, 985. That is true, yet demurrers to the contestant's notice have been filed in some instances, State ex rel. Miles v. Ellison, 269 Mo. 151, 190 S. W. 274; and the filing of an answer has been recognized as proper. [Sanders v. Lacks, 142 Mo. 255, 260-1, 43 S. W. 653.] Undoubtedly the contestee has a right to traverse by pleading the allegations of the contestant's notice or petition, whether technically necessary or not, and the respondent did that in this case by an answer which specifically denied that appellant received a majority of the legal votes cast in the election.

But conceding for argument's sake that this answer was insufficient to raise the issue affirmatively, it further appears that the county clerk recounted the ballots and certified his return, which, under Section 10359, Revised Statutes 1929 (Mo. Stat. Ann., p. 3773), is prima facie evidence of the facts stated therein. The return showed there were no registration numbers on any of the ballots in said five precincts in Joplin. Appellant stood on that evidence. Since the facts are conceded and appear from his own showing, the same rule of law must be applied to the ballots cast for him as to those cast for respondent. The doctrine is well established that in a damage action for negligence the defendant may avail himself of the defense of contributory negligence even though he has failed to plead it if the plaintiff stands convicted thereof on his own showing. [Inman v. Freund Bread Co., 332 Mo. 461, 467, 58 S. W. (2d) 477, 480.] The same has been said of the defenses of estoppel and waiver. [Brown Const. Co. v. MacArthur Bros. Co., 236 Mo. 41, 50, 139 S. W. 104, 106 (5).]

No decisions by the courts of this State on the precise question

have been cited by the parties. As the matter is controlled by statute, and there is great variance in the statutes of the different states, decisions from other jurisdictions are of little value. But one principle seems to prevail generally. As is said in 18 American Jurisprudence, section 303, page 375: ''An unsuccessful candidate has the burden of proving that a majority of the legal votes cast at the election were in his favor, and he must establish his right to the office upon his own title.'' So, also, 20 Corpus Juris, section 319, page 238, declares: ''Since in a contested election case the real inquiry is whether the contestant or the respondent received the highest number of legal votes, although no cross contest is filed, the respondent may show that the contestant was not in fact elected.''

Applying the foregoing principles so far (and only so far) as is necessary to the decision of this case on its facts, we are all agreed that respondent had the right—without filing a counter contest—to claim the advantage of any illegality voiding the ballots in appellant's favor as well as his own, in the five precincts mentioned, the infirmity appearing on appellant's own showing. It results, therefore, that if the votes for respondent should be rejected so should those for appellant, which would give respondent a majority. The outcome would be the same if all the ballots were counted. This is what the circuit court held.

For the reasons stated, the judgment is affirmed. All concur.

### On Motion For Rehearing.

ELLISON, J.—█ The appellant-contestant, Phelps, challenges our statement in the first and fifth paragraphs of Part II of the opinion that the contestee's answer in the trial court denied he (contestant) received a majority vote in the election. He quotes a part of the answer, which reads as follows: ''Contestee . . . denies that the *contestee* received a majority of the legal votes cast at said election.'' (Italics ours.) And he argues that the contestee by that allegation admitted himself out of court—in other words, admitted he (contestee) did *not* get a majority vote.

The contention cannot be sustained. The word ''contestee'' in the quoted excerpt evidently was used inadvertently for ''contestant'' or was a misprint. The other parts of the answer show it was contestee's theory that he was duly elected. And appellant did not file a motion for judgment on the pleadings in the lower court after the answer had been filed, but treated the aforesaid issue as being in the case. This question of pleading was not raised by contestant, so far as we can find, until he presented it in his *reply* brief in this court. In these circumstances the answer must be held sufficient to raise the issue. [Johnson v. Mo. Pac. Ry. Co., 96 Mo. 340, 346, 9 S. W. 790, 791, 9 Am. St. Rep. 351.]

Appellant further complains of the ruling in the sixth paragraph of Part II of the opinion. It is there stated that appellant stood on the county clerk's return, which was prima facie evidence of the facts stated therein, and which showed there were no registration numbers on *any* of the ballots cast in five precincts in Joplin. We held on these facts, thus appearing from appellant's own showing, that if the ballots cast for contestee must be thrown out because there were no registration numbers thereon, the ballots cast for contestant should be rejected for the same reason.

Appellant asserts we were in error in stating he stood on the evidence presented by the county clerk's return, and refers us to pages of the record showing that when the county clerk was canvassing the ballots, his counsel objected to the counting of any ballots *for contestee* from which the registration numbers were missing. But this was only a *legal* objection. The *fact* that there were no registration numbers on any of the ballots in these five precincts was not disputed. Indeed the clerk's return recites that counsel for both parties *requested* him to certify the registration numbers were missing from all these ballots.

Finally, appellant asserts our opinion overlooks the rule invoked in his brief that the statutes governing election contests are a code unto themselves, and that under Section 10341, Revised Statutes 1929 (Mo. Stat. Ann., p. 3767), a contestee cannot prosecute a counter-contest without giving the contestant twenty days' notice in writing, as was held in State ex rel. Phillips v. Barton, 300 Mo. 76, 91, 254 S. W. 85, 89. We think that question was not ignored but specifically ruled in the principal opinion. Our view remains unchanged that the judgment below should be affirmed. All concur.