COLLEEN ARMANTROUT, Appellant, v. E. C. BOHON.—162 S. W. (2d) 867.

Division Two, June 17, 1942.

*Roy Hamlin* for appellant.

*Gray Snider* and *Ben Ely* for respondent.

BARRETT, C.—The trial court sustained a demurrer to Colleen Armantrout's notice or petition to contest the election of E. C. Bohon to the office of Superintendent of Schools of Marion County and the question presented is whether her notice states facts constituting a cause of action entitling her to contest the election. The case was transferred here by the St. Louis Court of Appeals. [Armantrout v. Bohon, 157 S. W. (2d) 530.]

At the outset the appellant argues that a demurrer has no place in an election contest and the court had no authority to dismiss the suit but was bound to hear evidence and determine the contest on its merits. Her thesis is that the law relating to election contests constitutes a code unto itself, requires a summary hearing and informal pleading, it only being necessary that the notice "specify the grounds upon which the contestant intends to rely." [Secs. 11632, 11636, R. S. Mo. 1939.]

And, it is true that the statutory law relating to election contests constitutes a code unto itself. The civil code of procedure is of necessity inapplicable to such a proceeding, especially as to the procedure to be followed. [State ex rel. Hancock v. Spencer, 166 Mo. 279, 65 S. W. 984; State ex rel. Hartly v. Gideon, 225 Mo. App. 459, 40 S. W. (2d) 745.] But the statute does require a notice which takes the place of a petition in an ordinary civil action. Furthermore, the statute requires the contestant to specify "the grounds," which means the cause of action, upon which he relies for contesting the election. The notice of contest serves the dual purpose of bringing the contestee into court and of setting forth and advising him and the court of the grounds of complaint or contest so that it may be decided summarily. [State ex rel. Wells v. Hough, 193 Mo. 615, 91 S. W. 905.]

The "grounds" required to be stated "can only mean substantive averments—informal, maybe, but yet in plain terms setting forth a cause of action upon which issue may be joined." There is always the question, does "said notice set forth facts constituting grounds of contest?" Since the notice in an election contest takes the place of a petition in an ordinary suit it "must be judged by the rules pertaining to the sufficiency of a petition" and therefore must contain a statement of facts—not mere conclusions, which give rise to his right of contest or action and these grounds or facts must show the violation of some mandatory provision of the statute law relating to elections or such other conduct as usually invalidates an election. If the notice of contest does not contain such averments it is subject

to being dismissed·on demurrer. [Hale v. Stimson, 198 Mo. 134, 95 S. W. 885; Green v. Owens, 225 Mo. App. 746, 38 S. W. (2d) 496; State ex rel. Brown v. Stewart, 313 Mo. 1, 281 S. W. 768; State ex rel. Miles v. Ellison, 269 Mo. 151, 190 S. W. 274.] See and compare the sufficiency and insufficiency of the allegations in the above cases, as well as those in the following cases: State ex rel. Phillips v. Barton, 300 Mo. 76, 254 S. W. 85; Gantt v. Brown, 238 Mo. 560, 142 S. W. 422; Bradley v. Page (Mo. App.), 46 S. W. (2d) 208; Breuninger v. Hill, 277 Mo. 239, 210 S. W. 67.

Consequently, the question is whether the allegations of the appellant's notice constitutes such a statement of facts or cause of action that she sustains the burden of demonstrating, as an unsuccessful candidate, that a majority of the votes, at the April, 1939, election, were cast in her favor. [State ex rel. Miles v. Ellison, supra; Phelps v. Fenix, 345 Mo. 440, 134 S. W. (2d) 84.]

The allegation· which the appellant deems conclusive is that only one voting precinct was designated or provided for the City of Hannibal and "as a result many people who would have voted for her were not given the privilege and opportunity of voting and exercising their rights under the laws of the State of Missouri." Omitting all the formal prerequisites which are well stated the notice says: "That it was shown by the official canvass of the votes returned to the County Clerk of the Marion County Court that a total of 4347 persons voted· at said election. (Contestee received 2241 votes and contestant received 2106 votes.) That the records . . . further show that there were 50 voting precincts in Marion County for said election. The record of said court further shows that there was only one voting precinct provided for the entire City of Hannibal and adjacent and outlying territory, to-wit, at the Hannibal Court of Common Pleas Court House in the City of Hannibal, Missouri. And further, that of the entire total vote cast, to-wit 4347, a vote of 2141 or approximately one-half of the total vote ·cast was . . . at the · one voting precinct. .. . . .

"Contestant specifically herein sets up ·the names of 207 persons that she knows personally went to the Court House in the City of Hannibal to vote for her. Many of these people whose names are set out· herein waited for a great length of time and were unable to get into the polling place, and others made two and three trips to the Court House at different times of the day to get in to vote and were unable to get in to the polling places, and that a great many people who worked in industries in and about Hannibal did not get away from their work until·four o'clock or after, and went immediately to the Court House to vote and stood in line for a great length of time, and that for· hours before the polls closed there· was a line of people trying to get into ·the polling place that reached from the polling place

out onto the sidewalk . . . and even at the time the polls closed the line of voters extended from the polling place in the Court House out into the street.

"The following qualified voters (lists 207 people) . . . and entitled to vote in the City of Hannibal, who were turned away, or were unable to get into the polling place on election day."

The contestant then alleges that if these 207 people had voted they would have voted for her and as a result she would have been elected. She says that because of the inadequacy of the number of voting precincts the voters of Hannibal were discriminated against and deprived of their franchise. It is alleged that providing only one voting place for the City of Hannibal by the Hannibal School Board was a constructive fraud on the voters and the contestant.

While the general statutes relating to election contests apply to the office of county superintendent of schools the general election laws do not apply to the procedure to be followed in electing the superintendent. Article 14, Chapter 72, R. S. Mo. 1939, provides for such officials, their powers and duties, as well as their election. As to such officials the statute says: "the qualified voters of the county shall elect said county superintendent *at the annual district school meeting* held on the first Tuesday in April, 1923, and every four years thereafter." [Sec. 10609, R. S. Mo. 1939.] Ten days before the annual school meeting the county clerk is required to send the president or secretary of each school board tally sheets and supplies for conducting the election. It is the duty of the board of directors to see that the ballots are properly counted and transmitted to the county clerk. [Sec. 10610, R. S. Mo. 1939.]

Article 3, Chapter 72, R. S. Mo. 1939, contains the laws generally applicable to common schools and after providing for the annual meeting of the board in each district on the first Tuesday in April of each year says: "The qualified voters assembled at the annual meeting, when not otherwise provided, shall have power by a majority of the votes cast: . . . Eighth—To designate their choice, by ballot, for a person to fill the office of county superintendent of public schools." [Sec. 10419, R. S. Mo. 1939.]

This election for county superintendent of schools was conducted as though the law relating to city, town and consolidated schools was applicable and the parties make no point as to the propriety of such conduct. [Art. 5, Chap. 72, R. S. Mo. 1939; Robinson v. Wiese (Mo.), 210 S. W. 889.] The contestant especially relies on Sec. 10483, R. S. Mo. 1939, which, in so far as it is pertinent, is as follows:

"The qualified voters of such town, city or consolidated school district shall vote by ballot upon all questions provided by law for submission at the annual school meetings, . . . and *at such convenient place or places within the district as the board may designate,* beginning at 7 o'clock A. M. and closing at 6 o'clock P. M. of said day.

The board shall appoint three judges of election for each voting place, . . . and the election otherwise conducted in the same manner as the elections for state and county officers . . . Provided, that in all cities and towns having a population exceeding two thousand inhabitants . . ., in counties containing not less than two hundred thousand nor more than four hundred thousand inhabitants according to the last national census, *said election may at the option of the board be held at the same time and place as the election* for municipal officers, . . . and the judges and clerks of such municipal election shall act as judges and clerks of said school election . . . Provided, that if there shall be any other incorporated city or town included in such school district, *there shall be at least one polling place within such other* incorporated city or town . . .''

As the appellant suggests, ''elections should be so held as to afford a free and fair expression of the popular will.'' [State ex inf. McKittrick v. Stoner, 347 Mo. 242, 146 S. W. (2d) 891.] But ''elections are not lightly set aside'' and there is a vast difference in passing on the rules and regulations regarding the conduct of an election before the election is held and after. [29 C. J. S., Sec. 249, p. 360; 18 Am. Jur., Sec. 206, p. 319.] As a general rule an election will not be annulled even if certain provisions of the law regarding elections have not been strictly followed in the absence of fraud. [State ex rel. Miles v. Ellison, supra.] As to whether the election was conducted in accordance with the law the matter is aptly covered in Breuninger v. Hill, 277 Mo. 239, l. c. 247, 210 S. W. 67, l. c. 69: ''A first essential, therefore, in the determination of the matter at issue is whether any of the *mandatory* provisions of the Constitution or statutes regulating the rights of voters and the calling and conduct of the election have been violated.''

As we understand it, the appellant does not contend that any mandatory law, constitutional or statutory, was violated and we are unable to find any such violation from her allegations. The quoted statute (Sec. 10483, R. S. Mo. 1939) says the voting shall be ''at such convenient *place or places* . . . as the board may designate.'' It may ''at the option of the board'' be held at the same time and place as city elections are held in certain counties. But none of these provisions may be construed as mandatory. It does not appear that any city elections were being conducted at the time. There are times conceivably, when one voting place in Hannibal would be adequate for the submission of school matters to the voters of the district, although we doubt that to be the case when there is a contest over the office of county superintendent. But even so, we cannot say that the board's designation of only one voting place in that district was a violation of any mandatory provision of the law, even though it did not provide places easily accessible and convenient to the voters. The board may not have used the best judgment in selecting voting places but that

only one place was designated, in this. instance and under the circumstances, is not such an abuse of their discretion, or disregard of the election laws that the election may be invalidated for this reason. [18 Am. Jur., Sec. 113, p. 251; Ann. Cas. 1915C, p. 648.] See the irregularities complained of and held not to invalidate the elections in State ▆▆▆▆ ex rel. Muns v. Hackmann, 283 Mo. 469, 223 S. W. 575; Breuninger v. Hill, supra; State ex rel. Marlowe v. Himmelberger-Harrison Lumber Co., 332 Mo. 379, 58 S. W. (2d) 750; State ex inf. Mansur v. McKown, 315 Mo. 1336, 290 S. W. 123. In city elections where the statute or ordinance specified four wards and a polling place was provided in only one it has been held the election was valid. [State ex rel. Brown v. Town of Westport, 116 Mo. 582, 22 S. W. 888; Lebanon Light & Magnetic Water Co. v. City of Lebanon, 163 Mo. 246, 63 S. W. 809.] Or, conversely, to have four voting places when the ordinance says one does not invalidate the election. [State ex rel. Town of Canton v. Allen, 178 Mo. 555, 77 S. W. 868.] For allegations of conduct in such disregard of the law as to invalidate the election see State ex rel. Miles v. Ellison, supra; State ex inf. McKittrick v. Stoner, supra.

▆▆▆ Neither do the allegations that many people waited for a great length of time or made two or three trips and were unable to get in to vote or stood in line for a great length of time constitute fraud or such conduct in carrying on the election as to invalidate it. Doubtless if some of the appellant's supporters were so inconvenienced from the crowded condition of the polls that they became weary and went home without voting some of the respondent's adherents were likewise inconvenienced and left without insisting on their right to vote, because the result shows on its face that the respondent received a great many votes in the City of Hannibal. There is no allegation of fraud, no charge that any votes for appellant were rejected and it would seem the detriment from the size and capacity of the polls would fall about equally on both candidates. Under the contestant's pleading some of the 207 could have voted if they had stood in line and waited, if they had been willing to submit to some discomfort and inconvenience. And, as was said in Hale v. Stimson, 198 Mo. 134, l. c. 146, 95 S. W. 885, l. c. 887: "But, . . . it is not alleged any legal votes were cast for contestant and counted or returned for contestee. It is not alleged specified mistakes were made in favor of Stimson and against Hale by the judges and clerks in counting the votes, or otherwise." Consequently, the allegations are not such as to require the invalidation of the election. [Breuninger v. Hill, supra.]

▆▆▆ It is next alleged as a basis for the appellant's contest that the contestee, E. C. Bohon, was County Superintendent of Schools of Marion County at the time the election was held and that as such official he was "a part and parcel of the School Board . . . *and*

*had a right to vote with said School Board . . . as a part of his official duties* and .·. . when he had opposition to said office for re-election .·. . it was the duty of the said Hannibal School District .to have more than one voting precinct for said election." It will be noted the appellant charges that the contestee "had a right to vote," not .that he did vote or even try to persuade anyone else to so vote that there would be. only one polling place in the City of Hannibal. Certainly it cannot be seriously contended that this is such a charge of fraud or wrongdoing as to invalidate the election.

The final charge is "that at the voting precinct at Philadelphia, Missouri, a great many of the ballots cast for contestee were illegal, void and not cast according to the laws of the State of Missouri in that said ballots were taken by .the friends and workers of said E. C. Bohon from said voting precinct and away from said voting precinct to divers, various and many voters who purported to strike their ballot, or vote, at a place other than the regular voting precinct" which the judges and clerks permitted. As to these she charges "upon best information and belief . . . there were some twenty-five or more ballots so cast illegally, unlawfully and fraudulently."

Since the other two grounds of her contest do not state a cause of action this one fails because it does not state facts which if proven would change the result of the election or require the court to invalidate it. It is. not charged that the contestee did these things or even that he knew of them. Even if it were shown that "twenty-five" votes were illegally cast in Philadelphia that would not change the result of the election as the contestant alleges that contestee had a majority. of one hundred thirty-five votes. [20 C. J., 227, 298, pp. 186, 231; Bradley v. Page (Mo. App.), 46 S. W. (2d) 208; 29 C. J. S., Secs. 217, 219, pp. 319, 322; 18. Am. Jur., Sec. 229, p. 333.]

It is our view that the appellant's notice of contest fails to state facts constituting a cause of action or grounds for contesting the election and the trial court properly sustained the demurrer to her notice. Therefore the judgment is affirmed. *Westhues* and *Bohling, CC.,* concurs.

PER CURIAM:—The foregoing opinion by BARRETT, C., is adopted as the opinion of the court. All the judges concur.