Austin *v.* Soule.

---

CLARISSA AUSTIN *v.* ANDREW J. SOULE.*

*Replevin.    Advertising property to be sold on Execution.    Sheriff's Sale.    Private Sale.    Public Place.*

The statute, (G. S., p. 362, § 4,) requiring goods levied upon and sold on an execution to be advertised and sold at some " public place," *held*, to mean a place where the advertisement would be likely to attract general attention so that its contents might reasonably be expected to become a matter of notoriety; a barn, dwelling-house, shed, or even a rock or tree, if answering this condition may be a public place within the meaning of the statute.

Sheriffs' sales are an exception to the general principle that sales of personal chattels unaccompanied by a visible and substantial change of possession are inoperative as against the creditors of the vendor.

In the case of sheriff's sale the title to the property passes by operation of law; in private sale by the contract of the parties.

The difference between a sheriff's sale and a private sale consists rather in the character of the sale than in the publicity attending it.

*Quere.* Whether in the case of the sale of property by an officer on an execution, the sale being *prima facia* regular, a person who then had no interest in the property, is entitled to question the regularity of the sale without offering to show fraud in the officer's proceedings.

*This case was argued at the January Term, 1863.

Austin *v.* Soule.

REPLEVIN for two horses and one double-harness. Plea, the general issue, and trial by jury, at the April Term, A. D. 1862, ALDIS, J., presiding.

The property originally belonged to Albon M. Austin. The plaintiff, to establish her right to the same, showed a writ in her favor against the said Albon M., an attachment of the property by an officer, the sale of it upon the writ and the purchase of it by the plaintiff. The plaintiff also introduced a writing signed by Albon M. Austin and Clarissa Austin, consenting to a sale of the property attached under § 27 ch. 31, C. S. To show that "Clarissa Austin's dwelling-house"—the place named in the officer's return as the place where the property was advertised and sold, was a public place, the plaintiff introduced testimony tending to prove that the dwelling-house occupied by her and her family only, is perhaps over a half a mile from Milton Village, on the highway leading from Milton Village to Westford Village ; that it stands about ten feet from the line of the highway ; that from Mrs. Austin's house it is a quarter of a mile to any other house ; that people sometimes go from Milton to Fairfax by that road ; that the next house east of Mrs. Austin's is less than one third of a mile from hers, and the next house west of hers is less than half a mile.

It appeared that there was a shed about opposite to Mrs. Austin's house, and about three or four rods distant from it, its end open to the road, and within a rod or twenty feet of the travelled path, it being one of her out-buildings. The officer put up an advertisement of the sale of the property on the inside of the shed under cover, and about two or three feet from the end of the shed next to the road, and in plain view of the road, so that it could be plainly seen, though it could not be read from the road by persons travelling in one direction, or by looking back over the shoulder when travelling in the other direction. He put up another notice or advertisement of the sale at the store of Wood & Bascom at Milton Village. The notice put up on the shed was proved on trial.

The testimony on the part of the defendant tended to show that the horses and harness went back to the possession of Albon

M. Austin in about one week after the sale, and while so in his possession were attached by the defendant as an officer on a writ in favor of George A. Hubbell, against Albon M. Austin, as the property of the said Austin. It agreed satisfactorilly with that of the plaintiff in respect to the location of Mrs. Austin's house. No question arose but that the defendant's had duly got a judgment and levied on the property and sold it in due form of law.

The plaintiff requested the court to order a verdict for the plaintiff as the place of sale was a " public place." The defendant insisted that it appeared that the place of sale was not a "public place" and that a verdict should be ordered for the defendant. The court told the counsel that they should charge the jury, that by the policy of this state, private sales of personal property had to be accompanied by a change of possession to make them valid as against attaching creditors, while public sales by sheriffs did not require such change of possession ; that one reason of this difference was that the publicity of advertisement and sale at a public place,which attended sheriffs' sales, gave notice to the world of a change of title and stood in place of change of possession ; and that therefore the "public place" at which public property might be advertised and sold by sheriffs, must be one where people were accustomed to resort, and where they would be likely from being so accustomed to resort to get a knowledge of the advertisement and sale ; that in this case, Mrs. Austin's must be a place which people were so accustomed to resort to, or to stop at, that the neighbors and people in that vicinity would be likely to get a knowledge of the advertisement posted and of the sale made there. Upon this intimation of the court as to what the charge would be, the plaintiff submitted to a verdict for the defendant and took exceptions to the charge.

H. B. Smith, for the plaintiff, on the point that the property having been bid off by the plaintiff at the sheriff's sale, was protected without change of possession, cited Boardman v. Keeler, 1 Aik. 158 ; Batchelder v. Carter, 2 Vt. 168 ; Bates v. Carter, 5 Vt. 602 ; Gates v. Gaines, 10 Vt. 346.

Austin *v.* Soule.

As to what is a "public place" within the meaning of the statute. Laws of Vt. Slade's Ed. 209 ; *Burroughs* v. *Wright et als.*, 16 Vt. 619 ; *Flanagan* v. *Wood et al.*, 33 Vt. 332 ; *Hart Leslie & Warren* v. *F. & M. Bank*, 33 Vt. 252 ; *Wood* v. *Dane*, 20 Vt. 612 ; *Adm'rs of Janes* v. *Martin & Marcy*, 7 Vt. 92.

*Dewey & Noble* and *H. S. Royce*, for the defendant, cited, C. S. ch. 45, §§ 5 and 6 ; *Sutton* v. *Beach*, 2 Vt. 42 ; *Kelley* v. *Hart*, 14 Vt. 50 ; *Williams* v. *Amory*, 14 Mass. 20 ; 8 Johns. 361 ; 6 Vt. 388 ; 10 Vt. 346 ; 31 Vt. 617 ; 14 Vt. 50 ; 31 Vt. 624 ; 10 Vt. 346 ; 1 Aik. 158 ; 5 Conn. 592 ; 19 Vt. 77 ; 9 Mass. 265.

KELLOGG, J. The plaintiff in this case claimed title to the property which is the subject of the action by virtue of the sale of the same to her on an execution in her favor against her son Albon M. Austin, to whom it originally belonged. The defendant, as an officer legally authorized, attached the property after this sale, as the property of the same debtor and while it was in his possession, on a writ in favor of George A. Hubbell against him ; and, judgment having been duly rendered in that suit, the property was subsequently sold, in satisfaction of the execution issued thereon, in due form of law. The question which was litigated on the trial was, whether the place where the property was advertised and sold on the execution in favor of the plaintiff was a "*public* place" within the purview or intent of the statute requiring goods levied upon and sold on an execution to be advertised and sold at some public place in the town where the same were taken. (C. S. p. 310, § 4. G. S. p. 362, § 4.)

It is quite obvious that the term "public place" as used in the statute is to be interpreted in a relative rather than in an absolute sense, and must be defined by reference to the circumstances and the subject matter of each particular case. We call that "*public*" which is open for general or common use or entertainment, as a public highway or road, a public house ; and yet the term is more comprehensive than this definition. By an act of the 8th of March, 1787, a pair of stocks and a sign-post were to be erected and maintained "in the most public place" in each

Austin *v.* Soule.

town, (Statutes, Haswell's Ed. of 1791, p. 134,) and this form of expression implies that, of "public places," some may be more "public" than others, and that the term is used in a relative sense. By an act of the 28th of February, 1787, (Statutes, Haswell's Ed. of 1791, p. 65–66,) the officer levying an execution was directed, forthwith after levy, to "draw an account of the goods or estate he shall so seize and take, and set up the same on the sign-post of the town wherein he shall seize the same, or at such other place as may be agreed upon between the officer and the debtor," and to "set up together with such accounts a notification that the goods so posted are to be sold at the place where such notification was set up, at a time to be therein mentioned, not less than twenty days from the time of setting up such notification ;" and, if the debt with the costs and charges thereon, was not paid within the twenty days, then the property was to be sold "at an out-cry," to the highest bidder. The act of the 7th of March, 1797, contained substantially the same provisions, with this modification, that the property might be advertised to be sold, at or after the expiration of fourteen days, at public vendue, at the sign-post, or at such other public place as the officer should think most advantageous to the debtor. Slade's C. S. p. 209. The Act of the 28th of February, 1797, provided that suitable sign-posts should be maintained and kept in repair in the several towns, districts, or parishes in the state, and should be so constructed as to preserve the warrants for town and other meetings, notifications and other writings of notice, which may be posted and set up on the same, pursuant to the directions of law, from being destroyed or effaced by wind or weather ; (Slade's C. S. p. 416, § 25,) but no directions whatever were given by this act in respect to the location of these sign-posts. The statutory provisions requiring sign-posts to be maintained and kept in repair were omitted in the Revised Statutes of 1839, as the provisions in respect to erecting and maintaining "a pair of stocks" had been omitted in the Revised Statutes of 1797 ; but the only alteration made by the Revised Statutes of 1839 in respect to the place for advertising and selling property taken on execution was a provision that the prop-

42

erty should be advertised " *at some public place*," in the town where the property was taken, to be sold " at *public* auction, at such *public* place." (C. S. of 1850, p. 310, § 4.)

It has long been the settled law of this state, that the case of sales of property by a sheriff or other officer acting under and by virtue of legal process, is an exception from the operation of the general principle that sales of personal chattels, unaccompanied by a visible and substantial change of possession, are inoperative as against the creditors of the vendor. The sale under which the plaintiff derives her title to the property which is the subject of this suit, was one to which the provisions of the Revised Statutes of 1839, were applicable. A reference to these provisions, as well as to those of the previous statutes, will show a very distinct purpose in the legislature to secure for sales of this character such a degree of publicity or notoriety as will be likely to insure good faith in the sale, and to protect the rights of all interested in the property against collusion or fraud. The object to be attained by putting up an advertisement is to attract attention to it, so that it may be seen and read ; and if the advertisement is set up in a place where it would be likely to attract general attention, so that its contents might reasonably be expected to become a matter of notoriety in the vicinity, such a place should be considered a " public place" within the meaning of the statute. A private dwelling, a barn, a shed or other out-building, or even a rock, tree, or fountain, if answering this condition, might be a " public place," and might give greater notoriety to an advertisement of this character than if it was posted at a place where people were accustomed to resort or stop. The chief object to be sought is to give notoriety or publicity to the advertisement. There are towns in this state without a village, store, shop, mill, inn, or meeting-house ; and yet it cannot be doubted that any other place, where general attention would naturally be attracted to an advertisement, would be a " public place" within the meaning of the statute. Town meetings are required to be warned by notifications set up at "public places" in the respective towns. (C. S. p. 113, § 3, G. S., 106, § 3), and the notifications or warnings for freemen's meet-

ings are required to be set up at the places in the respective towns designated for notifying town meetings. (C. S., p. 51, § 9 ; G. S., p. 37, § 8.) We think that the charge of the court in this case placed the right of the officer to select the place for advertising and selling the property within too narrow limits, by confining the posting of the advertisement to a place where people stop to transact business, and that in this there was error. We consider the provisions of the statute as having regard principally to the object to be attained, rather than to the manner in which it is to be attained ; and they should receive a liberal rather than a restricted construction, especially when no want of good faith is imputed to the officer.

It is sometimes said that the exception which distinguishes sheriffs' sales from private sales in the particular already referred to, rests upon the publicity and character of the sale. But a private sale may have more notoriety than a sale by a public officer. It may be advertised in the same manner, and to a much greater extent, and may be conducted with even greater publicity ; and this consideration is sufficient to show that the exception rests rather upon the character of the sale than its notoriety. In a sheriff's sale the title to the property is transferred by operation of law, and not by the contract of the party as in the case of a private sale. In *Kelly* v. *Hart*, 14 Vt. 50, REDFIELD, J., expresses the opinion that this is the true ground on which this exception rests. The publicity attending sheriffs' sales, from advertisement, and sale at a public place, ought not, as we think, to be considered as standing in place of the change of possession required to make a private sale effectual as against the attaching creditors of the vendor ; and, in this respect, the charge of the court seems to us to be subject to exception. It will, of course, always be proper to show that the property was not advertised or sold in good faith, and that legal forms and process were perverted to a collusive and fraudulent purpose, and this, so far as the parties to the proceeding are concerned, would be a material subject of inquiry.

It may perhaps, well be doubted, in the case of the sale of property by an officer on an execution,—the sale being *prima*

*facie* regular,—whether a person who then had no interest in the property is entitled to question the regularity of the sale without offering to show that there was some attempt at concealment or collusion in the officer's proceedings having the character of positive fraud. *Adm'r of Janes* v. *Martin & Marcy*, 7 Vt. 92; *Hale* v. *Miller*, 15 Vt. 211 ; *Wood* v. *Doane*, 20 Vt. 612. But, as this point appears not to have been made in the county court, and was not particularly considered in the argument, and is not necessary to the present determination of the case, we leave it without further remark.

Judgment of the county court for the defendant reversed, and a new trial granted.