249 S.W.2d 450 (1952)
LAKE et al.
v.
RIUTCEL et al.
No. 42667.
Supreme Court of Missouri, Division No. 2.
May 27, 1952.
Don C. Carter, Sturgeon, for appellants.
Barnes & Barnes, Latney Barnes, John S. Divilbiss, all of Mexico, for above named respondents.
LEEDY, Presiding Judge.
This is an injunction suit challenging the validity and seeking to enjoin the registration and delivery of a $250,000 bond issue of Reorganized School District No. 6 of Audrain County, as authorized at a special election held within the district on March 7, 1950, for the purpose of purchasing a schoolhouse site, erecting school buildings and furnishing the same. Plaintiffs are resident voters and taxpayers of the district, and sue for themselves and on behalf of others similarly situated. The trial resulted in a decree denying relief, and dismissing the petition with prejudice, from which plaintiffs appeal.
*451 The issues have been so sharply narrowed in this court as to leave for decision only the question of the validity of the special election. Against its validity, plaintiffs urge two grounds or reasons, viz.: (1) Because it was not conducted in the same manner as elections for state and county officers, as specified by the resolution of the Board of Education calling such election, in that at one or more of the voting places booths were not provided; and (2) for failure to post at least five notices of the election in five public places in the district, as required by the governing statute. The facts will be stated in the light of these issues.
The proof consisted of documentary evidence except for the testimony of the witness Frank S. Paxson, the secretary of the Board of Education, and certain purely formal proof by two officials. The district is a reorganized school district under Laws 1947, pp. 370-377, V.A.M.S. § 165.657 et seq. All of its territory lies within Audrain County except about 320 acres situate in Callaway County, and 240 acres in Ralls. The resolution of the Board calling the election designated four polling places: Martinsburg, Benton City, Rush Hill and Laddonia. It also provided that the election be conducted in the same manner as elections for state and county officers. The ballot was voted by scratching out or erasing either the words "For the loan" or "Against the loan." The ballots numbered 942; 654 for the bonds, 285 against, and 3 void. (It was also in evidence that in the following August a proposition to disorganize and abolish the district was duly submitted to the qualified voters, and rejected by a vote of 1273 to 472.) From the secretary's testimony it appeared that while voting booths were used at Martinsburg and Benton City, there were none at Laddonia. There the polling place was the school gymnasium where tables were distributed all over the floor and away from the judges"A voter would come up to the judges and obtain a ballot and move off to one side and sit over at a table and scratch his ballot." With respect to the remaining precinctthat at Rush Hillhis testimony was even more fragmentary, and merely to the effect that he was there that afternoon after the voting had closed, and he did not see any booths; that the polling place was "a large school room with tables around." The facts bearing on the sufficiency of the notice of the election will be stated in treating that issue.
Passing over defendants' contentions to the contrary and assuming, without deciding, that the issue relating to the conduct of the election was properly raised and preserved, and that the provisions of the board's resolution in that regard had the effect of making Section 111.530 RSMo 1949, V.A.M.S., applicable, we come to the merits of the claim that the failure to provide booths at one or more of the polling places was, to use plaintiffs' language, "fatal to this special election." The evidence on the question was brief and fragmentary, the substance and effect of which in its entirety has already been stated. There was nothing in it to show (nor is the claim made, except by inference) that the balloting was not secret in fact. Of course, the object and purpose of the statute in making it the duty of the appropriate officers to provide at the polls "a sufficient number of places, booths or compartments," etc., was in furtherance of secrecy of the ballot. The question of the absence of booths as affecting that objective has been before this court at least twice in cases where the validity of special bond elections has been challenged for want of booths, and in both of them the claim now urged was rejected. State ex rel. Wahl v. Speer, 284 Mo. 45, 64-72, 223 S.W. 655, 660-664; Breuninger v. Hill, 277 Mo. 239, 248, 210 S.W. 67, 69-70. The court refused to annul such elections for want of, or failure to provide booths where, as here, the ballot was short and easy to conceal from observation while being marked. Nothing could be added to the exhaustive opinion of Goode, J., en banc, in the Speer case, where the cases on the subject are collated and analyzed. The Speer and Breuninger cases are directly in point and controlling in the case at bar, so the first of plaintiffs' contentions must be ruled against them.
Plaintiffs' other claim is that the election was void because the notice upon *452 which it was held was insufficient under Section 165.040 RSMo 1949, V.A.M.S., the pertinent provisions of which are: "Notice of said election shall be given at least fifteen days before the same shall be held, by at least five written or printed notices, posted in five public places in the school district where said election shall be held, * * *; it shall be the duty of the clerk to sign and post said notices."
The insufficiency complained of is that the places at which two of the notices were posted were not public places within the meaning of that statute. Neither the timeliness of the posting, nor the form or substance of the notice is questioned. It appears from the affidavit of the secretary of the board (as certified to the State Auditor as a part of the transcript of the record of the district in connection with the issuance and registration of the bonds) that he posted a copy of the notice of the election at each of six places, as follows:
"One on Monitor Bulletin Board located at Martinsburg, Mo.
"One on window, Dillard and Christopher located at Laddonia, Mo.
"One on electric light pole, Highway 19 located at 100 rds. more or less, north Audrain-Ralls Co. line.
"One on window, Coils Store located at Benton City, Mo.
"One on window Erdel's Hardware Store located at Rush Hill, Mo.; and
"One on electric light pole approximately 50 ft. east of the barnlot gate of Gordon Burton in Callaway County."
Plaintiffs expressly concede that four of such notices (those in the towns) were duly and legally posted, but they contend that neither of the two posted on electric light poles was in a public place, and hence there was a failure to post at least five notices in that number of places, as required by the statute.
The evidence shows that these two notices were posted, respectively, in those exceedingly small portions of the district lying in Ralls and Callaway Counties, such territory being sparsely populated and described as "rural," "agricultural," "farming land." In Ralls County only one or two families lived on the 240 acres within the district, and on the 320 acres in Callaway "not in excess of two families and a bachelor." It seems to be conceded that the two notices in question were posted as they were on the theory (whether mistakenly or not) that notices should be posted in all component counties of the district. The secretary testified that the electric light pole along Highway 19 on which the Ralls County notice was posted was a "high line" pole, the second one "north of a home that sits on the east side of the road" and probably 20 feet west of the slab. The notice was tacked up facing east; the pole was possibly 10 inches in diameter; "there wasn't any sidewalk along there for people to walk along, alongside the poles." Asked by plaintiffs' counsel, "Could you read that going by in a car at 40 miles an hour?" the witness answered, "No." Later, the same counsel asked, "Could you see the words `Notice of Bond Election' from the slab?" Witness replied, "No, I don't think so." As to the Callaway County location, the same witness testified that the electric light pole in question was an R. E. A. pole "right along the fence line," which pole was much closer to the traveled portion of the road than the one above referred to; that one riding along in a car would not be over 8 or 10 feet from the pole because the road was "very narrow," it being "just an ordinary dirt roadnot a slab." It is inferable but not entirely clear that the Gordon Burton place was within the district.
The witness further testified that he posted two other notices, "one at Eureka School and at the telephone pole at Scott's corner," but these were not listed in his affidavit for want of space. Plaintiffs contend that posting of these two additional notices cannot be considered because not included in the affidavit. In the view we take of the case, it becomes unnecessary to rule this question, but see State ex rel. School District of Affton v. Smith, 336 Mo. 703, 707, 80 S.W.2d 858, 860, where, notwithstanding mandamus to compel registration of bonds was denied because of failure of the record certified to the State Auditor to show that all conditions of the law were complied with in the issuance of bonds, it was, nevertheless, held *453 that the records could be corrected to make them show the truth, and that then the bonds could be registered.
The question of what is a "public place" within the requirement as to posting of notices is the subject of the annotation in 2 A.L.R. 1008. As there pointed out, the term "public place" is relative, and not absolute, and the test which will generally determine the question is whether posting in that particular place will fulfil the purpose of giving the publicity required by the nature of the notice. The first case appearing in the annotation says: "What is a public place for one purpose is not for another. A blacksmith shop in the country, or a tree at the intersection of public roads, would be a public place within the contemplation of the statute, * * * but it would clearly be an abuse of discretion thus to advertise town lots in a place 20 miles distant." Cummins v. Little, 16 N.J.Eq. 48.
There is but little direct authority on the question in this state, but there is close analogy between the situation here presented and that in Walker v. Sundermeyer, 271 Mo. 579, 582, 197 S.W. 102, 2 A.L.R. 1005, 1007. The statute involved in that proceeding (to organize a drainage district) required posting in at least five of the most public places in the proposed district. It was there held that the statute was complied with by posting the notices on trees and fence posts along private roads where they would be most likely to be seen by anyone passing through the district, where there was no post office, store, shop or schoolhouse, and no public road in the district. The present judgment similarly finds that "there was no store building, schoolhouse, public building or public gathering place of any kind in the Callaway and Ralls County portions of said school district. The two notices in question were actually posted in the most public places available in each of those counties most likely to be seen by anyone passing that way, particularly the residents of the school district in Callaway and Ralls Counties."
In Town of Wilson v. City of Sheboygan, 230 Wis. 483, 283 N.W. 312, it was held under a statute requiring notices to be posted in a certain number of "public places" within the municipality, that posting on a pole or tree by the roadside was sufficient if at a place as likely to be seen as any other place in the town. See, also, Seabury v. Howland, 15 R.I. 446, 8 A. 341; Lutgen v. Board of Commissioners, 99 Minn. 499, 110 N.W. 1.
In Thomas v. Martin, Tex.Civ.App., 166 S.W.2d 934, notice was posted on a telephone or light pole where the paved state highway intersected a paved public road, and at a point about 20 feet from the paved portion of the public road and approximately 30 feet from the paved portion of the state highway, and within a few feet of the fence surrounding the abutting Veterans' Hospital; held it was a fact issue for the court to determine whether or not this notice was posted in a public place. The trial court having so found, the judgment was affirmed.
In Hunt v. Isom, Tex.Civ.App., 77 S.W.2d 1095, 1097, one of the three required notices had been posted "on a pecan tree on the Fort Worth-Dallas Highway", the validity of which was sustained under a statute requiring posting in a public place. It was there said:
"The term `public place,' within the meaning of a statute requiring the posting of a notice therein, is relative, 46 C.J. § 74, p. 560;[*] 2 A.L.R. 1008, notes, and is a question partly of fact and partly of law. 2 A.L.R. 1008, supra.
"This being true, we cannot here say that, as a matter of law, the posting of the notices on a post or sign post and a pecan tree by the side of a public highway [as testified by the trustee who posted them] was not posting in a public place."
As the Sheboygan case points out, every telephone pole is not necessarily a public place within the meaning of such a statute, but under the particular facts here considered, and the finding of the trial court as to the likelihood of the notices being seen and giving the publicity intended, we have no *454 hesitancy in declaring the validity of the two questioned postings, and hence of the entire notice of election.
Judgment affirmed.
All concur.
NOTES
[*] See also, 66 C.J.S., Notice, § 18.