STATE of Missouri, at the Relation of J. I. BURLISON, Clyde Maloney, Roy Dillard, Halbert Cain, J. D. Till and Cleo Brent, Constituting the Board of Education of Reorganized School District No. 6, Pemiscot County, Missouri, and Curtis Howell, Fines Ward, Bryant Balzer, Hugh Crafton, Jess Crafton, James Ward, R. E. Clifton, W. W. Burlison, Johnny Arbuckle, Sid Regan, Earl Wainscott and O. E. Stone, Qualified Voters Residing in Reorganized School District No. 1, Pemiscot County, Missouri, Respondents (Relators),

v.

G. W. (Son) RONE, Jr., Harvey Wilson, Charley Wilson, Beyers Orton, Henry Burgess and Bernard Brockett, Members of the Board of Education of Reorganized School District No. 1, and Bernard Brockett, Secretary of the Board of Education of Reorganized School District No. 1 in Pemiscot County, Missouri, Appellants (Respondents).

No. 7492.

Springfield Court of Appeals.

Missouri.

July 5, 1956.

Ward & Reeves, Caruthersville, for appellants.

Jones & Jones, Kennett, for respondents (relators).

McDOWELL, Presiding Judge.

Mandamus proceeding by the State at the relation of Reorganized School District No. 6 of Pemiscot County, Missouri, against Reorganized School District No. 1, to compel the clerk and Board of Education to post notices of election on proposition of changing boundary lines between the two districts. The trial court granted the prayer of relators' petition and respondents have appealed.

On May 3, 1955, the Board of Education of Reorganized School District No. 6 of Pemiscot County, et al., filed their petition in the Circuit Court of Pemiscot County against the members and clerk of the Board of Education of Reorganized School District No. 1 in said county, alleging that on the —— day of March, 1955, petitions, signed by at least ten qualified voters residing in the respective school districts, were filed with the clerk requesting that there be detached from the respondent-district and attached to relator-school district certain described real estate; that pursuant to said petition the clerk of the relator-district posted notices in accordance with the law that the question would be voted upon at the annual meeting to be held at the relator-district on April 5, 1955, and that said election was so held and resulted in an affirmative majority vote. It is further charged in the petition that the clerk of the respondent-district failed and refused to post notices of said election at least fifteen days prior to the next annual meeting to be held in said School District No. 1 on the first Tuesday in April, 1955, to-wit, April 5, 1955, and that no election was held in respondent-district.

Relators' petition was presented to the regular Judge of the Circuit Court of Pemiscot County, May 3, 1955, who issued an alternative writ of mandamus in regular form. Respondents, in due time, filed pleadings to the alternative writ of mandamus and later amended such pleadings. Paragraph 5 of the amended return and answer reads:

"The Relators, J. I. Burlison, Clyde Maloney, Roy Dillard, Halbert Cain, J. D. Till and Cleo Brent, and Reorganized School District No. 6, as well as the other Relators herein have no equitable right or power to institute and prosecute this proceeding for the reason that the Board of Education of Reorganized School District No. 6 neglected and failed to properly call an election as charged in their petition, and wholly failed to post the required notice of special election in five public places as required by statute and the election purported to have been held by said Reorganized School *Distriact* No. 6 was null and void on account of the failure to give proper notice, and by reason of which facts the Relators are precluded from maintaining this action against these Respondents."

Change of venue was taken from the regular Judge and Honorable D. W. Gilmore, Judge of the 28th Judicial Circuit, was called in to try the case.

The cause was heard July 1, 1955, taken under advisement, and, on August 19, 1955, final judgment and peremptory writ of mandamus was issued against respondents requiring the holding of an election in respondent-district.

Appellants assign as error that the election held in relator-district was void because the notice upon which it was held was insufficient under Section 165.170 RSMo 1949, V.A.M.S.

The pertinent provisions of the statute are: "or to change the boundary lines of two or more districts, it shall be the duty of the district clerk of each district affected, upon the reception of a petition desiring such change, and signed by ten qualified voters residing in any district affected thereby, to post a notice of such desired change in at least five public places in each district interested fifteen days prior to the time of the annual meeting."

The insufficiency complained of is that three of the five notices required were posted inside private places of business, to-

wit, a grocery store, drug store and cotton gin.

The trial court held that these five notices were posted in five public places as required by the statute, and appellants contend that this ruling is erroneous and reversible error.

In Lake v. Riutcel, Mo.Sup., 249 S.W.2d 450, the court discusses the question of notice required under section 165.040 RSMo 1949, V.A.M.S. The notice required under this section is the same as required under section 165.170. On page 453 of the opinion the court states:

"The question of what is a 'public place' within the requirement as to posting of notices is the subject of the annotation in 2 A.L.R. 1008. As there pointed out, the term 'public place' is relative, and not absolute, and the test which will generally determine the question is whether posting in that particular place will fulfil the purpose of giving the publicity required by the nature of the notice. The first case appearing in the annotation says: 'What is a public place for one purpose is not for another. A blacksmith shop in the country, or a tree at the intersection of public roads, would be a public place within the contemplation of the statute, * * * but it would clearly be an abuse of discretion thus to advertise town lots in a place 20 miles distant.' Cummins v. Little, 16 N.J.Eq. 48.

"There is but little direct authority on the question in this state, but there is close analogy between the situation here presented and that in Walker v. Sundermeyer, 271 Mo. 579, 582, 197 S.W. 102, 2 A.L.R. 1005, 1007. The statute involved in that proceeding (to organize a drainage district) required posting in at least five of the most public places in the proposed district. It was there held that the statute was complied with by posting the notices on trees and fence posts along private roads where they would be most likely to be seen by anyone passing through the district, where there was no post office, store, shop or schoolhouse, and no public road in the district.

The present judgment similarly finds that 'there was no store building, schoolhouse, public building or public gathering place of any kind in the Callaway and Ralls County portions of said school district. The two notices in question were actually posted in the most public places available in each of those counties most likely to be seen by anyone passing that way, particularly the residents of the school district in Callaway and Ralls Counties.' "

The term "public place" within the meaning of a statute requiring the posting of a notice therein is relative, 2 A.L.R. 1008, notes, and is a question partly of fact and partly of law. 2 A.L.R. 1008.

In 66 C.J.S., Notice, § 18 f, p. 665, this law is stated:

"* * * The term 'public place' within the meaning of a statute providing for the posting of a notice therein is relative. There are certain places which prima facie may be regarded as public places for the posting of notice, so that the party claiming otherwise must show the grounds of his objection, as, for example, houses of worship, inns, and post offices. It seems that, in the absence of any place more public, a dwelling house in a sparsely inhabited community may be deemed to be a public place for the posting of the notice."

Appellants cite Carter v. Abshire, 48 Mo. 300. The question presented was that a sale under a deed of trust was void because the trustee did not give the requisite notice.

The deed of trust provided that the trustee give notice by setting up four written handbills in four places in the city of Chillicothe. It was contended in the argument that there are places more public than the sides of the public square, and that would better impart notice. But no evidence was introduced of this fact, and the court stated: "and the court cannot be expected to take judicial notice of it". It was held that the four sides of the public square were public places and the posting

of notices thereon satisfied the requirements.

In Vol. 35, Words and Phrases, Cumulative Annual Pocket Part, the law is stated:

"Term 'public place' in statute requiring notice of elections to be posted in five public places in school district where election shall be held, is relative and not absolute, and test as to what is a public depends on whether posting in that particular place will afford required publicity. Lake v. Riutcel, Mo., 249 S.W.2d 450, 452."

In 2 A.L.R. Annotations, p. 1009, it is stated:

" 'It is quite obvious that the term "public place", as used in the statute, is to be interpreted in a relative rather than in an absolute sense, and must be defined by reference to the circumstances and the subject-matter of each particular case. We call that "public" which is open for general or common use or entertainment, as a public highway or road, a public house; and yet the term is more comprehensive than this definition. * * * The object to be attained by putting up an advertisement is to attract attention to it, so that it may be seen and read; and if the advertisement is set up in a place where it would be likely to attract general attention, so that its contents might reasonably be expected to become a matter of notoriety in the vicinity, such a place should be considered a "public place", within the meaning of the statute. A private dwelling, a barn, a shed, or other outbuilding, or even a rock, tree, or fountain if answering this condition might be a "public place" '. Austin v. Soule (1863) 36 Vt. 645."

The evidence touching the position of public notices in the case at bar consists of only one witness, Mitchell Hogan, Jr. He testified that he lived in Wardell and resided in Reorganized School District No. 6 in March, 1955; that he was, at the time, secretary and clerk of said school district. He gave this testimony:

"Q. Did you post copies of this notice for change of boundaries in Reorganized School District No. 6? A. Yes, sir.

"Q. Did you post those notices more than fifteen days prior to the annual election on April 5, 1955? A. Yes, sir.

"Q. Did you post them in five public places in the township? A. Yes, sir.

"Q. I notice in your Relators' Exhibit 6, in your record stating where the notices were posted, one of them is the U. S. Post Office lobby. Tell the Court where that was. A. In Wardell and Pascola. In both post offices.

"Q. Those places are within the boundaries of Reorganized School District No. 6? A. Yes, sir.

"Q. You also recite you posted a copy in the City Drug Store. A. That was in Wardell.

"Q. In the boundaries of Reorganized District No. 6? A. Yes, sir.

"Q. You say the Citizens Gin Office. Where is that? A. Wardell. In R-6.

"Q. You recite that one was posted in Hillins Grocery. A. In Pascola.

"Q. In Reorganized District No. 6? A. Yes."

On cross-examination the witness testified that he posted the notices inside the buildings. He gave this testimony:

"Q. Did you put some in a business house in Pascola? A. In Hillins Grocery.

"Q. Did you put it inside or outside? A. Inside.

"Q. Where? A. On the door facing as you go in.

"Q. As you were coming out? A. Yes.

"Q. That is three. Where else? A. Citizens Gin office.

"Q. Where is that? A. Wardell.

"Q. In what part of the office? A. In the lobby.

"Q. That is a main office of a cotton gin at Wardell? A. Yes.

"Q. It is closed at nights and on Sundays? A. Yes, sir.

"Q. Where did you put the other one? A. In the City Drug Store at Wardell.

"Q. Inside or outside? A. Inside."

On redirect examination this testimony was given:

"Q. Mr. Hogan, did you post any inside on the glass? A. Yes, sir.

"Q. Were they posted so they could be read from the outside? A. Yes, sir, I would think so, in the general particulars."

Recross examination:

"Q. Where was that? A. At the gin office.

"Q. Was that the only one posted on a glass door? A. It isn't on the door. It is on the lobby glass where it can be read from the outside.

"Q. Do they have a place inside similar to a bank? A. Yes.

"Q. This notice was posted— A. Facing the outside.

"Q. How far from the front door of the building? A. About six feet."

In the case at bar it is admitted that the two notices posted in the post offices in Wardell and Pascola were posted in public places within the meaning of the statute. Appellants contend that the notices posted in the City Drug Store in Wardell, Hillins Grocery in Pascola and Citizens Gin office in Wardell were not posted in public places.

■ Following the law as declared in Lake v. Riutcel, supra, that the meaning of the term "public place" within a statute requiring the posting of a notice is relative and is a question partly of fact and partly of law, we cannot, under the evidence here, say, as a matter of law, the posting of the notices in the Drug Store, grocery store and cotton gin was not a posting in a public place.

In appellants' argument it is especially urged that the notice posted in the cotton gin did not comply with the statutory requirements of posting in a public place. It is urged that this court should take judicial notice that these notices were posted in March and that a cotton gin is not in operation in March. If we can take that judicial notice, we, likewise, can infer from the evidence in this case that the territory in Reorganized School District No. 6 is an agricultural territory, the principal crop being cotton. Cotton gins are not engaged alone in ginning cotton. Farmers are financed by cotton gins to make their crops; they obtain cotton seed for the planting of their crops from the gin in the community; they buy their fertilizer from the gin and they most generally purchase all of their seeds for farming purposes from the cotton gin, so it is apparent to this court that the cotton gin in question is a place where a great many people of the community go. It is a business much used by the people of the community and operates the year round.

■ We find from the evidence in this case and from the finding of the trial court, that the posting of the three notices in question fulfilled the purpose of the statute in giving the publicity required by the nature of the notice. We find that the posting of notices on the windows of the drug store, grocery store, and in the cotton gin, so as to be seen by the public, would likely attract general attention so that the contents thereof might reasonably be expected to become a matter of notoriety in the vicinity and such places should be considered a "public place" within the meaning of the statute.

It is the order and judgment of this court that the judgment of the trial court be

affirmed; that the cause be remanded and that a supplementary peremptory writ of mandamus be issued by the trial court fixing a date for the holding of the election in Reorganized School District No. 1 so as to comply with the statute.

STONE and RUARK, JJ., concur.